[No. 3643. Decided January 3, 1901.]

J. C. WHEELER, *Respondent,* v. F. A. BUCK & Co., *Appellant.*

| 23 | 679 |
|----|-----|
| f24 | 83 |
| 23 | 679 |
| 25 | 520 |
| 25 | 521 |
| 25 | 525 |
| 23 | 679 |
| 26 | 528 |
| 23 | 679 |
| 85 | 464 |
| 23 | 679 |
| 41 | 679 |

WITNESSES—IMPEACHMENT—RIGHT TO EXPLAIN INCONSISTENT STATEMENTS.

Where it is sought to impeach a witness by introducing in evidence a writing signed by him at another time, containing statements inconsistent with those made by him upon the witness stand, it is error for the court to so restrict the examination of the witness as to prevent his explaining at length and fully why he signed the writing and what he intended to accomplish by so doing, notwithstanding the fact that other witnesses have testified fully as to the circumstances of the signing.

SALES—BROKERS—COMMISSIONS—EVIDENCE.

In an action by plaintiff to recover a commission for procuring a sale of goods by defendant to a certain purchaser, in which the purchaser has testified that the sale to himself was not procured through plaintiff, as the latter had testified, it was error for the court to refuse to permit the purchaser to testify what it was that took him to defendant to buy goods, since such examination was admissible to show the circumstances that caused the purchaser to go to defendant to buy goods, in order to show the improbability of the sale's having been made through plaintiff's solicitation.

SAME—REASONABLE COMMISSIONS—EVIDENCE OF PROFITS.

In an action in which it is in issue as to whether a certain rate of commission had been contracted for on sales made by plaintiff for defendant, or whether plaintiff was entitled only to a reasonable commission, evidence on the part of defendant is admissible for the purpose of showing the profits on the sales as a basis upon which the reasonableness of the commissions due might be computed.

SAME—INSTRUCTIONS—RELEVANCY TO ISSUES.

In an action to recover upon an alleged contract for an agreed rate of commission on sales of goods made for defendant, where the contract was denied by defendant but the plaintiff was admitted to be entitled to a reasonable commission upon a portion of the sales, the defendant cannot urge as error the action of

the court in charging the jury that if they believed that the rate of commission was agreed upon, they should find their verdict accordingly; if they believed otherwise, then they should determine from the evidence what was a reasonable commission, and that plaintiff was entitled to recover upon the price of all goods the reasonable commission or agreed commission, as the jury might find from the evidence, since such instruction is relevant to the issues as raised by defendant's pleading.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Reversed.

*Preston, Carr & Gilman*, for appellant.

*Upton, Arthur & Wheeler*, for respondent.

The opinion of the court was rendered by

WHITE, J.—This action was brought by the respondent to recover from the appellant the sum of $256.05, with interest at the legal rate from September 9, 1899, for services alleged to have been rendered by the respondent to the appellant in procuring the firm of Schmitz & Anderson to purchase from the appellant a bill of goods, the appellant being a wholesale liquor merchant, doing business in the city of Seattle. The complaint alleged the employment by the appellant of the respondent to act as agent in procuring Schmitz & Anderson to purchase the bill of goods upon an agreed commission of ten per cent. of the selling price of all liquors in the bill except alcohol and champagne, and five per cent. of the selling price of alcohol, champagne, and other goods; that in pursuance of that employment he procured Schmitz & Anderson to purchase the goods; that the compensation agreed upon amounted to $306.05, of which he had been paid $50. The answer denied the employment, but admitted that the respondent procured the sale of a portion of the goods, to-wit, $1,934.11 out of $3,891.11, and that he was entitled

to a reasonable commission, not greater than the sum of
$100, therefor. The case was tried before a jury, who
returned a verdict in favor of the respondent for the full
amount of his demand. A motion for a new trial was
interposed on the following, among other, grounds: Exces-
sive damages; error in the assessment of the amount of
the recovery, in that the same is too large; insufficiency
of the evidence to justify the verdict; that the verdict is
against law, and error in law occurring at the trial, and
excepted to at the time. The motion for new trial was
denied, and judgment entered upon the verdict, from
which judgment this appeal is prosecuted.

The respondent testified to the agreement as alleged in
the complaint, and that he procured Schmitz & Anderson
to purchase the goods from the appellant. His testimony
as to the making of the contract was corroborated by one
Richardson. Appellant's manager, Buck, with whom the
respondent testified he made the contract, testified in rela-
tion thereto that respondent came to the store of the appel-
lant on the 4th of September, 1899, and said that there
were a couple of persons in town going to buy three or four
thousand dollars' worth of goods, and said, "If I bring
them down, will you give me a commission?" and he
(Buck) said, "Yes." He further testified that nothing
was said as to the amount of the commission; that the two
persons were mentioned as Schmitz and Anderson. The
testimony of Anderson was to the effect that the respondent
solicited him to buy from appellant before he knew Mr.
Schmitz, and before the partnership of Schmitz & Ander-
son was formed, but that he informed respondent that he
thought he would buy from Mr. Goldstein, but that he had
not determined yet; that after the partnership was formed,
he left the buying to Mr. Schmitz. The partnership be-
tween Schmitz and Anderson was formed on September 8,

1899.   It appeared from the evidence that Schmitz ordered from Buck & Co. a bill of goods amounting to about $2,000, and afterwards formed a partnership with Anderson, and then increased the original order until it amounted (including bills bought from other merchants, to-wit, Schwabacher Bros. & Co., Inc., Schwabacher Hardware Co., Harrison & Treat, and Rainier Beer Co., and included in appellant's bill) to $3,891.11.   Respondent testified that, prior to the giving of the first order by Schmitz, he had been introduced to Schmitz, and had suggested to him that he buy his bill of goods from Buck & Co.   This was denied by Schmitz, who testified that he did not meet the respondent until after he had given the $2,000 order to appellant, and by Buck, who testified that the respondent came into the store while Schmitz was ordering the goods, and he (Buck) then and there introduced Schmitz to the respondent, they not having previously met. The respondent, a short time previous to the formation of the partnership,.had urged Anderson to form a partnership with Schmitz.   After the partnership was formed, respondent solicited Anderson to have the firm buy their bill from appellant, but Anderson answered that Schmitz would do all the buying in that line for the firm, and the uncontradicted testimony is that Schmitz did do the buying by doubling up the bill which he testified he had ordered from appellant before he formed a partnership with Anderson and before he knew the respondent.   Because of these facts, appellant conceded that respondent was entitled to a commission upon the increase in the order made after the partnership was formed, designating them in its answer as the goods bought by Anderson as distinguished from those bought by Schmitz.   Mr. Schmitz testified positively that at the time he gave the $2,000 order he did not know the respondent, and that the respondent had nothing to do with

procuring either that order or the increased order.  He further testified that the $2,000 order for himself was given several days before he formed a partnership with Mr. Anderson, and that while giving the order the respondent came into the appellant's place of business, and he was there introduced to him for the first time.  The final order was given on the 9th of September, 1899.  During the cross-examination of Mr. Schmitz, a paper writing to the following effect was produced by the respondent, and designated "Exhibit C":

"Seattle, Wash., Sept. 12th, 1899.

This is to certify that we purchased our goods from F. A. Buck & Co.  It was through Mr. E. Chilberg that we were introduced to Mr. J. C. Wheeler, who in turn took us to the above firm.

Witnesses:                    H. P. Anderson.
W. T. Moore                   A. F. Schmitz.
F. Dimmock."

The respondent testified that Mr. E. Chilberg, mentioned in Exhibit C, was the person who introduced him to · Anderson, and made known to him that Anderson contemplated going to Alaska with a stock of liquors, and that he was not introduced to Anderson by Chilberg until after he had made his arrangement with the appellant.  It was also shown that Chilberg was a friend and acquaintance of Anderson's.  Anderson testified that Mr. Wheeler had been around quite frequently and wanted him to sign a paper similar to Exhibit C, but that he refused, and told him if there was any commission coming it was to Mr. Chilberg; that he was the man who was actually entitled to it; that he told Mr. Chilberg the circumstances; that Mr. Chilberg went home and wrote out Exhibit C; that Anderson and Wheeler looked it over and he (Anderson) signed it; that he signed it through his acquaintanceship

with Chilberg, supposing that he would enable Mr. Chil-
berg to get a commission. On cross-examination, he testi-
fied as to his reasons for signing it and the circumstances
of the signing, and he further testified as to the circum-
stances, conversations about signing it, and reasons for Mr.
Schmitz signing it. In rebuttal, Mr. Chilberg was called
as a witness for respondent. He testified that Anderson
denied that Wheeler was entitled to anything, and
that the writing was prepared with the view that, if
any commission was paid he (Chilberg) should be entitled
to some of it on account of introducing Mr. Wheeler to
Mr. Anderson. The paper was signed on the steamship,
in the hurry of departure. No representative of appellant
was present when it was signed, and the appellant knew
nothing about the signing of this paper. Mr. Chilberg
and Mr. Moore both testified for the respondent in rebut-
tal as to the circumstances of the signing of the paper
by Mr. Schmitz. This paper could not have been intro-
duced as evidence against the appellant, and was admis-
sible only as tending to contradict and impeach testimony
of Schmitz and Anderson. Yet it is fair to presume that
it greatly controlled the action of the jury. Upon cross-
examination of the witness Schmitz, counsel for the
respondent produced Exhibit C aforesaid and examined
the witness in relation thereto. On re-direct examination,
counsel for appellant undertook to inquire from the wit-
ness as to the circumstances surrounding the execution of
the paper, and, after many objections and adverse rulings
by the court, finally obtained a partial explanation of the
surrounding circumstances, and then asked the following
question, "Did you know at the time you signed that paper
that it contained anything relating to the subject of the
instrumentality through whom—the persons through
whom—you made the purchase from Buck & Co?" This

question was objected to by counsel for respondent as lead-
ing, immaterial, irrelevant, and cross-examination of his
own witness. The objection was sustained. Counsel for
appellant then questioned the witness as follows: "Did
you know, at the time you signed that paper——." At
this point the court interrupted, and ruled that no fur-
ther question should be asked the witness upon that point,
saying that if it desired to put any further questions on
any other subject it might do so; otherwise, the witness
could stand aside. "Any further questions in reference
to that paper the court will rule out." This action of the
court appellant assigns as error. This signed statement
was not in the nature of a contract in writing. It was
a mere statement or declaration of the witness, made at
another time, different from and inconsistent with that
made by him on the witness stand.

"Since such attempted impeachment is a direct attack
upon the testimony of the witness, and may result in seri-
ous consequences, it is important that the practice should
be so regular that the witness may have *full* opportunity
to admit, deny or explain any statement which is thus
assailed." 3 Jones, Evidence, § 848.

Notwithstanding the fact that other witnesses testified
fully as to the circumstances of the signing of the writing
by Schmitz, we think Schmitz himself should have been
allowed to fully explain how he came to sign, and his
motives in signing. He was the only witness who could
testify as to his reasons for signing such a paper. We
think that the court erred in restricting the examination
of the witness, and in not allowing the witness to explain
at length and fully why he signed the writing, and what he
intended to accomplish by so doing.

The appellant asked Schmitz, during the course of his
examination in chief, the question, "What was it that took

you to Buck & Co. to buy your goods ?" to which the court sustained an objection. Thereupon appellant offered to prove by the witness Schmitz on the stand what the cause was that took him to Buck & Co. to buy; that it was entirely disconnected with the respondent; that the respondent had nothing to do with it. This offer the court refused, over respondent's objection. This is assigned as error. We think this was a proper question. The witness should have been allowed to show the circumstances that caused him to go to appellant to buy his goods, as rendering improbable the testimony of the respondent; for instance, that he had dealt with Buck & Co. before, or that some one else procured him to go there, or any circumstance showing that it was improbable that it was through the solicitation of the respondent. Such testimony is not positive in its character, but it is admissible, and the weight of it is for the jury. Jones, Evidence, §§ 901, 136; *Insurance Co. v. Weide,* 11 Wall. 440.

The appellant's answer admitted that the respondent procured Anderson to purchase $1,934.11 worth of merchandise from appellant, but denies that it was on the contract alleged by respondent. And the appellant admits that the respondent by reason thereof became entitled to receive from the appellant $100 and no more. Appellant further pleads that on account of such services it has paid the respondent $50. In effect, the appellant pleaded a contract of *quantum meruit* between it and the respondent for respondent's services in procuring Anderson as a purchaser. The court accepted this theory and instructed the jury as follows:

"If you believe from a preponderance of the evidence that the rate of commission—the rates of commission— were fixed by the parties in their conversation on September 4th, then you will compute the amount due plaintiff

on the basis of the commissions so agreed upon. If you
do not believe from the evidence that the parties in fact
fixed the rates of commission, then you will determine
from the evidence what rate of commission was a reason-
able one on the date of the sale, and in that event you will
compute the amount due plaintiff at such reasonable rate
of commission."

Portions of the bill of goods going to make up the total
of $3,891.11 were purchased by Schmitz & Anderson from
other merchants, and were billed to Buck & Co., and by
them to Schmitz & Anderson. Appellant offered to prove,
as bearing upon the question of fact as to whether there
was an agreement to pay five per cent. commission on these
goods, that the commission allowed by the other merchants
to Buck & Co. was less than five per cent. The court
excluded the evidence upon respondent's objection. In the
exclusion of this evidence error is assigned. As bearing
on the same question, appellant sought to prove the profit
of Buck & Co. upon the entire transaction. The court
excluded the evidence, and error is assigned for this. The
witness Buck testified that one of the items of the bill
(alcohol) would bear no commission whatever, in answer
to an inquiry as to what was the reasonable commission on
that item. The answer of the witness to the inquiry,
"Why?" was excluded by the court, which action is
assigned as error. As to another item of the bill (beer),
respondent asked the witness Buck what was the reasonable
commission. He answered: "No commission; spot cash.
They had gone to the brewery and had the lowest spot
cash price." This answer was stricken out by the court,
on motion of counsel for respondent. Error is assigned
for this. As to another item of the bill, to-wit, the hard-
ware bought from the Schwabacher Hardware Co., the
witness Buck was asked by appellant's counsel whether

appellant had any interest or profit in that item. His answer was excluded by the court, and error is assigned for so doing. The same assignment of error is made to cover the same question relating to the Harrison & Treat item, and the reasonable commission upon the item of champagne. We will consider all these assignments together.

The appellant, by his pleadings, denied the special agreement alleged by respondent, and Mr. Buck, the manager, with whom the respondent testified he made the contract, denied in his testimony that any agreement was made for special commissions, and the appellant by its pleadings says that there was no agreement to pay any commissions, save reasonable ones, and that the services rendered by the respondent were reasonably worth $100, and no more. We think the testimony was relevant, as bearing upon the probabilities of the alleged contract. Was it reasonable to suppose that the appellant, who was a merchant, carrying on his ordinary business, would pay commissions of five or ten per cent. on the sale of goods, when the profits on the sales would not justify such payment, and in many instances not equal the commissions? The authorities sustaining the admission of this kind of testimony are numerous. In an action on a contract for work, when the testimony is conflicting as to the price agreed upon for the work, it is competent to show the value of such work at the time the contract was made, as tending to show what the agreed price was. In the case of *Allison v. Horning,* 22 Ohio St. 138, in which the plaintiff claimed that the agreed price for the work was $1.50 a perch, and the defendant claimed that the contract price was $1.35 a perch, the plaintiff was permitted to prove what it was worth to do the work embraced in the contract. The court says:

"The only point of difference between the parties was the *price* for which it was *agreed* the work should be done. The evidence was admitted for no other purpose than to enable the jury to decide which of the prices claimed by the respective parties was the true price agreed upon. Of course, the weight of the evidence would be more or less affected by the other circumstances of the case, and be increased or diminished in proportion to the difference between the price claimed and the actual value of the work. But it was of some value, as tending to show the improbability of the claim of the defendant, and to enable the jury to arrive at the truth upon the point at issue between the parties, and was, therefore, admissible for what it was worth, in connection with the other evidence in the case. We are sustained in this view of the case by authority. In *Kidder v. Smith,* 34 Vt. 294, it was held that, 'When the testimony is conflicting as to the price agreed upon in the sale of personal property, it is competent to show the value of the property at the time of sale, as tending to show what the real contract was.' The chief justice, in delivering the opinion, said: 'The parties were in dispute, and their evidence conflicting—whether the defendant was to pay thirty-five or sixty dollars for the mare; and it became necessary to resort to circumstances and probabilities to determine which was right. As showing a probability in favor of the defendant's version of the trade, we think it was competent for the defendant to prove the value of the mare to be even less than the sum he agreed he was to pay. * * *' To the same effect are the cases of *Kimball v. Lock,* 31 Vt. 683; *Bradbury v. Dwight,* 3 Met. 31; and *Swain v. Cheney,* 41 N. H. 232. The action in *Swain v. Cheney* was brought on a special contract for drawing lumber over a particular route. The controversy between the parties was as to the price agreed upon for the work. The plaintiff claimed that it was one dollar and fifty cents per thousand, and the defendant claimed it was one dollar per thousand. Each party gave evidence to establish his claim. The court held that 'evidence was admissible, as bearing upon the probabilities of the case, to show what

44—23 WASH.

was the usual and common price paid at that time and place for similar services.' "

*Rubino v. Scott,* 118 N. Y. 662 (22 N. E. 1103), was an action brought upon an alleged contract of employment of plaintiff by defendant to assist him in purchasing certain railroad bonds for an agreed compensation. The making of the agreement and the rendition of the services were put in issue. The judgment in the court below was against the plaintiff. The supreme court says:

"Defendant was allowed to prove, under objection and exception, the usual rates of commission in the city of New York, where the agreement was alleged to have been made, for buying and selling railroad bonds. The court say, in *Weidner v. Phillips* (114 N. Y. 458), it was held that when the fact of an agreement for the sale of property for a specific price is in dispute upon the trial, evidence of its value may be given as bearing upon the question. There is no reason why the same rule may not be applicable to that arising out of the disputed fact whether the defendant, by agreement, undertook to allow and pay to the plaintiff the amount of commissions, etc., for services as claimed by him. In that view the exceptions were not well taken."

In *Banghart v. Hyde,* 94 Mich. 49 (53 N. W. 915), an action to recover $100, the facts as claimed were that defendant held plaintiff's note for $1,200, purchase price of certain property. Plaintiff could not pay. It was agreed that the note should be surrendered to plaintiff if plaintiff would turn over to defendant certain property. This was done and the note surrendered. Plaintiff claimed that in addition he was to receive $100. The defendant admitted the transaction as stated, but denied that he agreed to pay the additional $100. For the purpose of showing the reasonableness of his claim, plaintiff offered to show by his own testimony what the value of

the property transferred by him to defendant actually was. Defendant was also asked on cross-examination what was the value of the threshing machine and all the other property at the time it was turned over to him by plaintiff. These questions were objected to, and the objections sustained by the court. Plaintiff further offered to show that the value of the property was $1,400 or $1,500, which offer was excluded by the court; and no testimony was allowed upon the subject by the trial court, who not only excluded the testimony, but charged the jury specially that it must not consider it. The court said:

"We think this testimony competent. If the property largely exceeded in value the note which defendant surrendered, it was a circumstance which the jury had a right to consider in determining which of the parties was entitled to belief. It was an issue squarely made; one testifying that the $100 was agreed to be paid, and the other denying it *in toto*. As was said in *Campau v. Moran,* 31 Mich. 282: 'When the parties were thus distinctly at issue upon the terms of the contract, evidence that the cost of performance of such a contract as the defendant set up would be greatly in excess of the contract price would certainly afford some reasonable ground for believing that defendant is in error on the facts.' "

See, also, *Rauch v. Scholl,* 68 Pa. St. 234; *Raymond v. Day,* 111 Mich. 443 (69 N. W. 832); *Moore v. Davis,* 49 N. H. 45 (6 Am. Rep. 460); *Misner v. Darling,* 44 Mich. 438 (7 N. W. 77).

"The rule of law seems to be, in controversies where a special agreement is alleged to have been made on one side, and is denied on the other, that it is relevant to put in evidence any circumstances which tend to make the proposition at issue either more or less improbable; and this, not to change the contract, but as evidence of what it was, and the probability that the agreement or one of the other was made." *Standish v. Brady,* 41 N. Y. Supp. 651.

There is another reason for the admission of the proposed evidence. The appellant admitted that the respondent—but not under the alleged contract—performed services for it in procuring Anderson as a purchaser, but alleged, in effect, that such services were reasonably worth only $100. This was denied by the respondent. The court, in considering the pleadings, held that the plaintiff was entitled to recover on his alleged contract, or a reasonable rate of commission. We think the pleadings justified such instruction. That being so, the appellant had a right to show his profit on the transaction as a basis, among other things, upon which the reasonableness of the commissions might be computed. *Barney v. Fuller,* 133 N. Y. 605 (30 N. E. 1007).

It is extremely doubtful whether the evidence justifies the recovery of any commissions on the goods sold by Schwabacher Bros. & Co., Inc., Schwabacher Hardware Co., Harrison & Treat, and on the Rainier beer; but, as this case will have to be re-tried, we will not now pass upon that question.

The tenth error assigned, to the effect that the court instructed the jury that, if they did not find that the contract was made as alleged by respondent, they should award respondent reasonable commissions, we do not think is well taken. The appellant, by its pleadings, called for a determination of this question. The answer was not a simple denial. The issue of the reasonableness of compensation was made by the appellant, and it cannot now complain because the court instructed on the issues made by it.

The judgment of the court below is reversed and this cause is remanded for a new trial; the appellant to recover its costs on this appeal.

REAVIS, FULLERTON and ANDERS, JJ., concur.