[No. 3936.   Decided July 13, 1901.]

CHARLES P. COEY, *Appellant,* v. WILLIAM H. DARKNELL, *Respondent.*

WITNESSES — SCOPE OF CROSS-EXAMINATION.

In an action upon a promissory note, where there was a distinct issue raised by the pleadings as to whether it had been partially paid by defendant's delivery to plaintiff of a crop of wheat, and where defendant's witness had testified to that effect, cross-examination of the witness directed to the condition of the crop, for the purpose of showing that the quality of the wheat would make such a contract improbable, was proper, although the witness had not testified in chief as to the condition or value of the crop.

SAME—QUESTION FOR JURY.

In such a case, it is not only competent for plaintiff to show the improbability of the alleged contract owing to the poor condition of the wheat, by cross-examination of defendant's witnesses, but he would be entitled to have the question of such improbability submitted to the jury upon the cross-examination alone, without the introduction of rebuttal evidence.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*Crow & Williams,* for appellant.

*A. J. Laughon,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought to recover the amount of a promissory note made by William H. Darknell to Charles P. Coey. The note was dated April 13, 1899, matured October 1, 1899, and is for the principal sum of $237.85, with interest at one per cent. per month after maturity, and $50 attorney's fees should suit or action be instituted to collect it. The complaint alleges that no payments have been made upon the note, and that the whole amount of principal and interest thereon is due and

unpaid. The answer admits the execution of the note, but denies the remaining allegations of the complaint. It is also alleged affirmatively in the answer that the defendant sold his interest in a crop of grain which grew upon a farm owned by plaintiff to one Collins, the agent of plaintiff, and as a consideration for such sale Collins, as agent of plaintiff, promised and agreed to credit defendant with the sum of $212 on the aforesaid note, and that thereafter said agreement made by said Collins with defendant was ratified by plaintiff. It is further alleged affirmatively that, at the special instance and request of plaintiff, defendant purchased for plaintiff's use and benefit a quantity of grain sacks, for which he paid the sum of $43, and that plaintiff thereafter used said sacks, and promised and agreed to pay defendant the sum of $43 therefor. The answer seeks to have the $212 item above mentioned credited upon the amount of said note, and also as much of the $43 item as is required to pay the balance of the note, and prays for judgment over against plaintiff in the sum of $17.25. The reply denies all the affirmative allegations of the answer. A trial was held before a jury, and a verdict returned in favor of defendant and against the plaintiff for the sum of $18.35. A motion for a new trial interposed by plaintiff was by the court denied, and judgment was thereafter entered in favor of defendant and against the plaintiff for the sum of $18.35 and costs. From said judgment the plaintiff has appealed.

At the trial respondent introduced evidence in support of the affirmative allegations of his answer. Both respondent and a witness in his behalf by the name of Dimmick testified as to the fact of the sale of the crop and the terms thereof as set up in the answer. Upon cross-examination of the said witnesses concerning the said contract of sale, appellant's counsel sought to show by them that the crop

which they had testified was sold was in poor condition and of little value. General objections to questions intended to elicit such testimony were by the court sustained; whereupon counsel for appellant made the following offer:

"For the purpose of making the record I now make an offer of what we wish to ask this witness. We offer to prove by this witness on cross-examination on the question as to whether or not a contract was ever made that the crop was in a very bad condition; that it was very questionable whether there would be sufficient realized from it to pay the actual harvesting expenses, including heading and threshing, and that all of the parties were familiar with the condition of the crop."

To this offer a general objection was made that the testimony was immaterial, incompetent, and irrelevant, which objection was also sustained. These rulings of the court are assigned as error, and it is urged by appellant that the error so assigned falls within the rule recently announced by this court in the cases of *Wheeler v. F. A. Buck & Co.,* 23 Wash. 679 (63 Pac. 566), and *Dimmick v. Collins,* 24 Wash. 78 (63 Pac. 1101). It is conceded by counsel for respondent that unless this case can be distinguished from that of *Dimmick v. Collins, supra,* it will have to be reversed, and a new trial must necessarily be ordered. The last named case involved the identical contract which is under consideration in this case. The appellant in that case, both by cross-examination of his adversary's witnesses and by his own evidence, offered to prove the character, condition, and value of the crop at the time the contract was alleged to have been made. Objections to questions having this object in view were sustained by the court. While the appellant in that case was upon the stand as a witness in his own behalf, and after he had denied the making of the alleged contract, and after he had

also denied that he was to pay any sum except from the proceeds of the crop, his counsel asked him the following question: "State what the condition of the crop was." The court sustained an objection to said question. Thereupon counsel made an offer to prove certain facts concerning the crop, which was almost identical with the offer made in the case at bar. An objection to the proposed testimony was sustained. This court held that the evidence was relevant, and should have been admitted. It is said in the opinion in that case:

"Where there is a dispute between the parties whether or not such a contract has been made, the circumstances surrounding the transaction are permissible to show whether the contract was probable. The law assumes that men make fair bargains; that is, that when they contract they make their agreements equal."

The case of *Wheeler v. F. A. Buck & Co., supra,* is cited in the opinion as decisive of the case. The opinion in the last named case extensively discussed the principle invoked here, and many authorities bearing upon the point are cited therein. It is therefore unnecessary to review them here. In the case at bar the alleged contract for sale of the crop was set up in respondent's answer and denied by the reply. Its existence was therefore squarely in issue under the pleadings. After respondent and his witness had testified that such a contract was made, appellant sought by cross-examination to show that the crop had little value as bearing upon the improbability that such a contract was made. Respondent's counsel concedes the correctness of the rule of law announced in the cases above mentioned, but undertakes to distinguish this case from those on the ground that the controversy over the proposed testimony in this case arose during cross-examination of respondent's witnesses. It is urged that the proposed cross-examination was not proper cross-examination, for

the reason that the witnesses had not been asked in chief anything about the condition or value of the crop, and several decisions of this court are cited in support of the well known rule that the scope of cross-examination is confined to the same matters to which the examination in chief is directed. The objection was, however, not based upon the ground that it was not proper cross-examination, but was a general objection on the ground of immateriality and incompetency. But, in any event, even if the objection had been urged upon that specific ground, we think it would not have been well taken. The scope of cross-examination is not confined to merely asking a witness if certain facts about which he has testified in chief are or are not true. It would be of little use if it were so restricted. Its office is rather to test the accuracy of the witness's statements in chief by a searching inquiry as to all matters directly stated or suggested by his testimony the analysis of which may tend to discredit the truthfulness of his statements.

Greenleaf, in his work on Evidence (vol. 1 [15th ed.], § 446), says:

"The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests, which the law has devised for the discovery of truth. By means of it the situation of the witness with respect to the parties, and to the subject of litigation, his interest, his motives, his inclination and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description are all fully investigated and ascertained, and submitted to the consideration of the jury, before whom he has testified; and who have thus had an opportunity of observing his demeanor, and of determining the just weight and value of his testimony. It is not easy for a witness, who is subjected to this test, to im-

pose on a court or jury; for however artful the fabrication of falsehood may be, it cannot embrace all the circumstances to which a cross-examination may be extended."

These witnesses had testified that a certain contract had been made for the sale of a certain crop, the terms of which, as stated by them, necessarily included a consideration of some value for the crop. It is true they were not asked in chief about its value or condition, but it was certainly a matter for legitimate inquiry upon cross-examination to ask about the value and condition of the very thing which was the subject matter of the alleged and disputed sale. If it had developed upon cross-examination that the crop was of little value, or, as suggested in the proposed offer, was not worth more than the cost of harvesting and threshing, such fact so elicited from the witnesses who had testified as to a positive contract, would have had a tendency, at least, to discredit their testimony because of the improbability that such a contract would have been made concerning a practically valueless crop. We, therefore, think the testimony sought was proper on cross-examination. It does not meet the difficulty here to say that appellant could have introduced this evidence in chief under his reply. The right of proper cross-examination is as fully secured to a litigant as is the right to introduce evidence in chief. The existence of the contract having been denied in the pleadings, the burden of proof was upon the respondent to establish it, and appellant had the right, if he so chose, to submit to the jury the fact as to the alleged contract, upon the testimony adduced by respondent's own witnesses as developed by cross-examination.

In *Elwood v. Western Union Telegraph Co.*, 45. N. Y. 549, 553, 554 (6 Am. Rep. 140), it is said:

"It is undoubtedly the general rule that where unimpeached witnesses testify distinctly and positively to a

fact and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption. . . . But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely, disqualified a witness, necessarily assumed that the witnesses were disinterested. That qualification must, in the present state of the law, be added. And furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases, courts and juries are not bound to refrain from exercising their judgment and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached."

It is contended by appellant that both respondent and the witness Dimmick are shown by the evidence to have been interested in sustaining the alleged contract of sale, and that, if appellant had been permitted on cross-examination to show the improbability of their statements, the jury might have found on their testimony alone that no such contract was ever made. The case of *Kavanagh v. Wilson,* 70 N. Y. 177, was an action by a real estate broker against the personal representatives of a deceased customer to recover an alleged agreed compensation for effecting a sale. The only witness as to the contract was the son of the plaintiff, whose own compensation depended upon plaintiff's success. The compensation alleged to have been agreed upon was more than double the usual compensation, and other circumstances rendered the statement of the witness not entirely free from improbability. It was held that the case was a proper one for the jury and

that a refusal to submit the question to the jury, and the direction of a verdict for the amount claimed was error. In the case of *Tracey v. Town of Phelps,* 22 Fed. 634, 635, it is said:

"Upon this case the court refused to rule, as matter of law, that Post was a *bona fide* purchaser of the bonds, and left the question as one of fact to the jury. This was not error, because the jury were at liberty utterly to reject his testimony as incredible, although he was not impeached or contradicted by direct evidence. It was enough to authorize the jury to do this, that there was some intrinsic improbability in Post's narrative, and he had shown himself unworthy of credit by his attempt to falsify the transaction respecting the sale of the bonds made by him to the plaintiff."

In *Quock Ting v. United States,* 140 U. S. 417, 420, 421 (11 Sup. Ct. 733), it is said:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

The subject matter of the testimony proposed in this case comes clearly within the rule announced in *Wheeler v. F. A. Buck & Co.* and *Dimmick v. Collins, supra,* and for reasons herein assigned, we think appellant's right to

pursue a cross-examination of respondent and his witnesses upon that subject is such as cannot be denied. Whether the permission of such cross-examination would have led to a different result of course we cannot know. It is sufficient to say it might have done so, since the jury would then have had the benefit of the witnesses' statements and manner of testifying upon that line of examination. A principle is involved here which is invoked directly under former decisions of this court, and, since we believe those decisions are founded upon correct principles, we must follow them. It is proper to say that the decisions referred to had not been rendered at the time this case was tried below. Since the case must be reversed upon the ground herein discussed, it is not necessary to discuss other assignments of error.

The judgment is reversed and the cause remanded, with instructions to the court below to grant the motion for a new trial.

REAVIS, C. J., and ANDERS, DUNBAR, FULLERTON, MOUNT and WHITE, JJ., concur.