[No. 7617.  Decided March 27, 1909.]

ANNIE HARRIS et al., *Respondents*, v. PUGET SOUND ELECTRIC RAILWAY, *Appellant*.[1]

APPEAL—REVIEW—VERDICT—CARRIERS.  The finding of a jury that a pass issued to an employee, whose duty took him over the line from place to place, was a part of the consideration for his services and not a gratuity, is conclusive where that was one of the principle issues in the case.

CARRIERS—FREE PASS—EXEMPTION FROM LIABILITY — EMPLOYEES. Where a pass is issued to an employee as part of the consideration for his services, a clause exempting the carrier from liability for negligence is void as against public policy.

SAME—FREE PASS—IN CONSIDERATION OF WAGES—EVIDENCE—CUSTOM—ADMISSIBILITY.  Upon an issue as to whether a pass issued to an employee, who was required to travel back and forth over the road, was in part consideration for his services, it is admissible to prove a general custom of the carrier to furnish transportation to such employees as a part of their wages, it being relevant to show that such a contract was probable.

[1]Reported in 100 Pac. 838.

19—52 WASH.

SAME—INJURY TO PASSENGERS—ISSUES AND PROOF—GRADES—DE-
SCRIPTION OF LOCALITY. In an action for damages from a head end
collision of interurban electric cars, in a cut, it is not error to admit
evidence as to the grades and curves not alleged in the complaint,
when confined to the locality, and the jury are instructed at the time
that it was only for the purpose of describing the situation at the
place where the accident occurred.

SAME—NEGLIGENCE—FAILURE TO FLAG TRAIN — VICE PRINCIPALS.
The negligence of a flagman to notify a train of another train ap-
proaching through a cut, is a nondelegable duty of the carrier,
rendering the carrier liable to another employee traveling as a
passenger, although other alleged acts of negligence were not proved.

SAME—FACT OF ACCIDENT—PRESUMPTION. The fact of a collision
between electric trains raises a *prima facie* case of negligence as
regards a passenger on the train.

SAME—WHO ARE PASSENGERS—EMPLOYEE WITH PASS. An em-
ployee having no duties on the train and traveling on a pass fur-
nished in consideration of his employment, has paid his fare, and
is a passenger, whether riding on the time of the company or not.

DAMAGES—DEATH—EXCESSIVE VERDICT. A verdict for $15,000 for
the death of the foreman of a "bonder gang" on an electric railway,
a bright, active man of good habits, 41 years of age, earning $115
per month, with a wife and two children, is not excessive.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered April 17, 1908, upon the ver-
dict of a jury rendered in favor of the plaintiffs, in an action
for the death of an employee. Affirmed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Blaine, Tucker & Hyland* and *Robert C. Saunders*, for
respondents.

MOUNT, J.—This action was brought by the plaintiffs to
recover against the Puget Sound Electric Railway, and W. S.
Dimmock, its manager, for the death of W. L. Harris, caused
by alleged negligence of the defendants. The cause was
tried to the court and a jury. The trial resulted in a judg-
ment and verdict in favor of the plaintiffs for $15,000,
against the railway company. The company appeals.

On December 26, 1906, and for a long time prior thereto,

the appellant was engaged in operating an electric railway between the cities of Seattle and Tacoma. The deceased W. L. Harris, on that date and for some time prior, had been in the employ of the appellant as foreman of a "bonder gang." It was his duty to maintain and keep in repair the bonds or electric connections between the rails of the track, and the third rail carrying the electric power whereby the trains were operated. At the time of his death and for some time prior, the deceased lived with his family at Kent, a station about midway between Tacoma and Seattle. His duties required him to be at different places on the line of railway, to make repairs, and he was required to travel over the line from place to place with his crew of men. The appellant furnished him a pass, which he and the men under him were in the habit of using in going from place to place. This pass read as follows:

"Puget Sound Electric Railway. Quarterly ticket. 1906. Pass W. L. Harris and five men, bonders. Void after Dec. 31, 1906. No. 641. W. S. Dimmock, Manager."

Upon the back of the pass was printed the following:

"CONDITIONS.

"This free ticket is not transferable and if presented by any other person than the individual in whose name it is issued, if altered by erasures, additions or interlineations, or in case any questions arise between the conductor and the holder as to its validity or the right of the bearer to use it, the conductor will take up this ticket, collect fare, and report the case to the superintendent. The signature of the holder of any pass presented and not taken up must be written upon the blank (Form A-901) provided for that purpose when presented by the conductor with the spacings properly filled in, when the conductor will take up the blank and ring for it upon the register as a ticket. The person accepting this free ticket agrees that the Puget Sound Electric Railway shall not be liable under any circumstances, whether of negligence by its agents or otherwise, for any injury to the person or

for any loss or damage to the property of the passenger using the same.

"I accept the above conditions.        W. L. Harris.

"This pass will not be honored unless signed in ink by the person for whom issued."

On the morning of December 26, 1906, the deceased boarded one of the appellant's southbound passenger trains at Kent, known as train No. 3, for the purpose of going to Tacoma, where his duty at that time called him. He was accompanied by his son Otto, who at that time was employed as a member of the bonder gang. When train No. 3, upon which Mr. Harris and his son were riding, arrived at Edgewood, a small station between Kent and Tacoma, a flagman, who had been trusted to notify the officer in charge of train No. 3 that another train was approaching from the opposite direction, failed and neglected to so notify the officers of train No. 3. The result was a head-on collision, in a cut a short distance out of Edgewood, between train No. 3 and a work train, No. 626. In this collision Mr. Harris received injuries from which he soon thereafter died. His son Otto was also severely injured. At the time of the accident, the deceased did not have his pass with him, but he had signed the form A-901 referred to in the pass. The conductor was also killed. It was shown that the conductor had not punched the blank form No. A-901, as was his custom, but it appears reasonably certain that the deceased was riding by virtue of the pass. Other facts necessary to an understanding of the points raised will be stated in connection therewith. Appellant assigns some twenty-seven errors, but they are discussed under eight different heads. We shall notice them in the same way.

It is first argued that the judgment is erroneous for the reason that the deceased, at the time of his injuries, was riding upon a free pass containing a contract exempting appellant from liability. One of the principal issues in the case

was whether the pass was a mere gratuity from the appellant to the deceased, or whether it was given upon consideration of the hire of deceased and as a part consideration for his wages. This question was submitted to the jury, and we must now, in view of that issue and of the finding of the jury, necessarily conclude that the pass was not a gratuity, but was a part consideration for the wages of the deceased. In a note found on page 557, 4 Am. & Eng. Ann. Cases, the rule is thus stated:

"The decisions are not in harmony as to the effect to be given to a provision in a free pass exempting the carrier from liability for injuries caused by its negligence or that of its servants. According to one view, such an exemption is contrary to public policy and not enforceable."

As sustaining this view a number of cases are cited, among them *Mobile & Ohio R. Co. v. Hopkins*, 41 Ala. 486, 94 Am. Dec. 607; *Rose v. Des Moines Valley R. Co.*, 39 Iowa 346; *Jacobus v. St. Paul etc R. Co.*, 20 Minn. 125, 18 Am. Rep. 360, and other cases. The note then continues:

"In other jurisdictions the view is taken that there is no violation of law or public policy by an agreement on the part of the pass holder that the carrier shall not be liable for injuries caused to him by its negligence or that of its servants."

In support of this rule are cited a number of cases, among which are *Northern Pac. R. Co. v. Adams*, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513; *Boering v. Chesapeake Beach R. Co.*, 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742; *Payne v. Terre Haute R. Co.*, 157 Ind. 616, 62 N. E. 472, 56 L. R. A. 472; *Rogers v. Kennebec Steamboat Co.*, 86 Me. 261, 29 Atl. 1069, 25 L. R. A. 491, and other cases. This court, in *Muldoon v. Seattle City R. Co.*, 7 Wash. 528, 35 Pac. 422, 38 Am. St. 901, 22 L. R. A. 794, and 10 Wash. 311, 38 Pac. 995, 45 Am. St. 787, held to the last-named rule, where the pass was a mere gratuity. But in *Peterson v. Se-*

*attle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586, at page 645, we said:

"But we expressly hold that if the respondent's transportation *constituted a portion of the consideration for his services*, he became a passenger for hire, just the same as anybody else who parts with anything of value for transportation."

It follows from this rule, and from the finding of the jury, that the transportation in this case was not a gratuity, but constituted a part consideration for the deceased's services; that the deceased was a passenger for hire and entitled to protection as such passenger, which public policy does not permit him to waive.

It is next claimed that the court erred in receiving evidence relating to the terms of the employment between appellant and third persons. The evidence was to the effect that the appellant employed other persons, in bonding and other work on the road, where such employees were required to travel back and forth on the road, and that it was the practice and general custom of the appellant to furnish transportation in substantially the same form, and that it was stated by the manager of the company that such transportation was a part consideration for wages, in some instances amounting to $15 per month. While it is true, as a general rule, that evidence of a contract with one person is not evidence of the terms of a contract with another, yet where the evidence is offered to show a general custom, in such cases it is admissible.

"It is held by this court, in common with many other courts, that in controversies where a special agreement is alleged on the one side and denied on the other, it is relevant to put in evidence any circumstance which tends to make the question more or less probable; this not to change the contract but as evidence of what it was." *McCowan v. Northeastern Siberian Co.*, 41 Wash. 675, 84 Pac. 614.

See, also, *Warwick v. Hitchings*, 50 Wash. 140, 96 Pac. 960; *Dimmick v. Collins*, 24 Wash. 78, 63 Pac. 1101; *Wheel-*

*er v. Buck & Co.*, 23 Wash. 679, 63 Pac. 566. We think this evidence was proper under the issues in the case.

Appellant argues that the court erred in admitting evidence as to the grades and curves of the track, and as to cuts through which it runs. Evidence of this kind was admitted, but it was confined to the immediate vicinity of the accident and for the purpose of "describing the situation where the accident occurred," and not as tending to prove negligence not charged in the complaint. This was clearly stated to the jury, and we are satisfied the jury was not misled. It was therefore not error.

It is next argued that the negligence alleged was not proved. Several acts of negligence were alleged in the complaint, in substance that appellant failed to notify either train No. 3 or train No. 626 of the approach of the other; that appellant failed to provide a safe and adequate means of notifying its employees of the movements of trains; that appellant failed to promulgate adequate rules for the protection of the trains; failed to adopt a safe train order system; and failed in its duty to employ a careful and experienced train dispatcher. It was not necessary for the respondents to prove all these alleged acts of negligence. It was the duty of the appellant, as a common carrier of passengers, to use the highest degree of care in transporting its trains from one point to another. The accident was caused by the negligence of a flagman to notify the two trains of the approach of each other upon the same track. It is true, the dispatcher gave the order to the flagman, and if the flagman had done his duty the accident would not have occurred. The flagman, however, let No. 3 go by him without notifying the train that another train was approaching upon the same track. The prime duty rested upon the appellant to avoid a collision of the two trains. The appellant could not delegate that duty to another, and escape liability if that other should become neglectful. The negligence of the flagman, therefore,

became the negligence of the railway company itself, as between the company and the passengers upon its trains. This specific act of negligence was clearly proven. The mere fact that the collision occurred was sufficient to make a *prima facie* case of negligence so as to place the responsibility upon the appellant. *Williams v. Spokane Falls & N. R. Co.*, 39 Wash. 77, 80 Pac. 1100; *Firebaugh v. Seattle Elec. Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836; *Jordan v. Seattle, Renton etc. R. Co.*, 47 Wash. 503, 92 Pac. 284; *Russell v. Seattle, Renton etc. R. Co.*, 47 Wash. 500, 92 Pac. 288. We are satisfied that the first alleged ground of negligence was clearly proven, and it is therefore not necessary to consider the evidence tending to prove others.

Appellant next argues that certain instructions given and refused were erroneous. This contention is based upon the theory that the deceased was not a passenger upon the train, but was a mere employee, entitled to none of the rights of a passenger. The deceased had no duties to perform upon the train. He was there solely for the purpose of being transported from Kent to Tacoma. If he had paid his fare he certainly would have been a passenger, the same as any other person traveling on the train. There is no evidence that he paid his fare in money for this particular trip, but we think it is reasonably certain that he was riding by virtue of the pass above set out. This pass, as we have seen above, was not furnished to him as a mere gratuity, but was furnished him by reason of his employment, and in consideration thereof. He was at liberty to use it for his private business or the business of appellant. If he were using it upon his private business, he was a passenger entitled to protection as such. *Peterson v. Seattle Traction Co., supra; Doyle v. Fitchburg R. Co.*, 166 Mass. 492, 44 N. E. 611, 55 Am. St. 417, 33 L. R. A. 844.

There was some evidence to the effect that, after he boarded

the train at Kent, he was traveling upon the time of the railroad company, and many authorities hold that employees carried free under such circumstances are not to be considered as passengers.  6 Cyc. 643; 5 Am. & Eng. Ency. Law (2d ed.), 516.  But whether the deceased was riding upon his own time or that of the appellant makes no difference if he paid his fare.  It is reasonably certain in this case that he paid his fare, for the transportation was found to have been issued upon sufficient consideration, and was not given to him as a mere gratuity.  We think, therefore, the instructions were not erroneous.

It was last contended that the verdict and judgment is excessive.  The deceased at the time of his death was forty-one years of age, earning on an average $115 per month.  He was a bright, active, industrious man of good habits.  He left a wife and two children.  This amount is large, but we are not convinced that it is excessive.

We find no error in the record, and the judgment must therefore be affirmed.

RUDKIN, C. J., CROW, DUNBAR, FULLERTON, CHADWICK, and GOSE, JJ., concur.