[No. 545-1. Division One—Panel 2. May 17, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES LEE TEMPLE, *Appellant.*

*Francis & Ackerman* and *Jack J. Ackerman,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney, Patricia G. Harber* and *James E. Warme, Deputies,* for respondent.

JAMES, J.—James Lee Temple was convicted by a jury of first-degree murder. Under the instructions, the jury could have found that the homicide was either premeditated or that the victim was shot while Temple was "in the commis-

sion of, or in an attempt to commit, or in withdrawing from the scene of an attempted robbery."

Temple first assigns error to the limitation placed on his cross-examination of an eyewitness to the homicide. The witness was a 16-year-old boy. Some years prior to the time of the homicide he had been adjudged delinquent and had spent approximately 1 year in a juvenile institution primarily because he had no other home. He was, at the time, living with his aunt in the apartment building where the homicide occurred. Out of the presence of the jury and prior to any interrogation of the witness, the state requested and was granted a ruling that the witness' "juvenile involvements" be excluded from the area of cross-examination.

██ A prior conviction of a crime may be shown to affect the credibility of a witness.[1] A juvenile commitment, however, is not equivalent to a conviction of a crime.[2] *State v. Wilson*, 1 Wn. App. 1001, 465 P.2d 413 (1970).

The legislative determination that an adjudication of delinquency or dependency is not to be deemed equivalent to a criminal conviction does not necessarily mean, however, that evidence of juvenile court involvement is never admissible. If the witness is himself the criminal defendant who has taken the stand, his adult conviction, though not relevant to the charge at issue, may nevertheless be shown for the limited purpose of attacking his credibility. His juvenile record may not. If, however, the witness is not a criminal defendant, different considerations prevail. No constitu-

---

[1] "Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer thereto." RCW 10.52.030.

[2] "An order of court adjudging a child delinquent or dependent under the provisions of this chapter shall in no case be deemed a conviction of crime." RCW 13.04.240.

4

tional or statutory immunity of the witness is at stake. What is at stake is the defendant's constitutional right to confront the witnesses against him.

In *Pointer v. Texas*, 380 U. S. 400, 403, this Court held that the Sixth Amendment right of an accused to confront the witnesses against him is a "fundamental right . . . made obligatory on the States by the Fourteenth Amendment." . . .

. . .

As the Court said in *Pointer*, "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." 380 U. S., at 404. Even more recently we have repeated that "a denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart v. Janis*, 384 U. S. 1, 3.

*Smith v. Illinois*, 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748 (1968).

Unless an accused is afforded reasonable latitude in examining witnesses against him, he is effectively denied his right of confrontation.

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

*Alford v. United States*, 282 U.S. 687, 692, 75 L. Ed. 624, 51 S. Ct. 218 (1930).

Temple argues that reasonable latitude in cross-examination should have permitted him to explore the extent of the witness' juvenile court involvement to demonstrate that he was "a person who was accustomed to having someone in authority dictate to him what he could or could not do."

It is a basic and essential rule that "[t]he extent of the cross-examination of a witness upon collateral matters which tend to affect the weight to be given the witness'

testimony, rests within the sound discretion of the trial court." *State v. Goddard*, 56 Wn.2d 33, 37, 351 P.2d 159 (1960).

The record suggests that the trial judge may initially have felt that the juvenile court law, RCW 13.04.240, required him to exclude any reference to the juvenile court record of the witness. However, it is clear that the trial judge carefully considered Temple's contention but concluded that because of the collateral nature of the proposed cross-examination, no prejudice would result if testimony concerning the witness' juvenile court involvement was excluded. We find no abuse of discretion.

Error is next assigned to the following exchange as constituting a comment on the evidence by the trial judge in contravention of the Washington State Constitution.[3]

By Mr. Ackerman:

Q. Percy, have you discussed your testimony in the case with anyone before you came here this morning?

A. No.

Q. You haven't discussed this case with anyone at all before you came in?

Mrs. Harber: That wasn't the question he asked the witness, your Honor. He asked him if he had discussed the case this morning with anyone.

The Court: Yes, be sure, Percy, before you answer a question that you fully understand it, and if you don't, ask them and you may ask that it be explained to you. Perhaps if the Court Reporter read the question back.

(The last question read by the reporter.)

Q. (By Mr. Ackerman) Maybe I misled the witness. Percy, have you discussed the case with anyone before you came and took the witness stand this morning, not particularly today, but on other days?

A. Other days, no.

The Court: I don't think he understands the question. You had better use words like, have you talked this over with anyone, or have you talked about the case with anyone before you came into court today.

---

[3] "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Const. art. 4, § 16.

6

Temple contends that in the above exchange, the trial judge commented "with respect to matters of fact" by indicating his belief in the credibility of the witness.

The purpose of article 4, section 16 of the state constitution " 'is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted.' " *State v. Lampshire,* 74 Wn.2d 888, 892, 447 P.2d 727 (1968).

If the trial judge conveys to the jury his personal opinion regarding the truth or falsity of any evidence introduced at the trial, he has thereby violated the constitutional mandate. *State v. Bogner,* 62 Wn.2d 247, 382 P.2d 254 (1963).

The 16-year-old juvenile had dropped out of school in the seventh grade and could not read. Clearly the judge's admonition was intended to insure that the boy understood questions put to him before he answered them. This was a proper exercise of judicial responsibility to insure a fair trial. It was not an unconstitutional comment on the evidence. *See State v. Hettrick,* 67 Wn.2d 211, 407 P.2d 150 (1965).

Temple's next assignment of error is that, as a matter of law, the evidence is insufficient to sustain a conviction of murder in the first degree.

As to the alternative charge of "felony" murder, Temple points out that "time and circumstances had intervened between the homicide and the taking" of the victim's property. Temple argues that because of the sequence of events the essential connection between the crime of robbery and the homicide was absent.

There was substantial evidence from which it could be found that the following occurred: Following an encounter with the victim and a companion, Temple produced a girl who was presumably a prostitute. The girl and the victim went to the first-floor hallway of a nearby apartment building. There they conversed and the girl attempted to put her hands into the victim's pockets. He pushed her away. The girl called to Temple who entered the building carrying a revolver. The girl said, "Shoot him, shoot him." Temple

pointed his gun at the victim and fired point blank. The victim staggered and fell on the entryway stairs. Temple and another man dragged the victim to the sidewalk in front of the building, removed his shoes, took his watch and wallet, and left the scene.

By the terms of Washington's first-degree murder statute,[4] a "felony murder must occur in the commission of, an attempt to commit, or in withdrawing from the scene of a felony, and must *not* be separate, distinct, and independent from it." *State v. Harris*, 69 Wn.2d 928, 933, 421 P.2d 662 (1966). Temple argues that the taking of the victim's property was, at most, a larceny under RCW 9.54.090(1).[5] Temple's apparent theory is that at the time the victim's property was taken, the essential elements of the crime of robbery, *i.e.* force or violence or fear of injury[6] were not present.

The facts do not support Temple. There was substantial evidence to permit a finding that the shooting of the victim and the taking of his property were parts of the same transaction. The fact that the homicide preceded the final

---

[4]"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

" . . .

"(3) Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; . . ." RCW 9.48.030(3).

[5]"Every person who steals or unlawfully obtains, appropriates, brings into this state, buys, sells, receives, conceals, or withholds in any manner specified in RCW 9.54.010—

"(1) Property of any value by taking the same from the person of another or from the body of a corpse; . . ."

[6]"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. . . ." RCW 9.75.010.

act of the robbery does not fragment the transaction. *State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962).

Neither could Temple prevail if he argued that the victim was dead when the property was taken from his body.

> The final contention made is that one cannot be guilty of robbery if the victim is a deceased person. As an abstract principle of law this is true, as essential elements of the crime of robbery would necessarily be lacking. However, that principle cannot apply here, because the robbery and the homicide were all a part of the same transaction, and the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the crime charged.

*State v. Coe*, 34 Wn.2d 336, 341, 208 P.2d 863 (1949). There was substantial evidence to support the "felony murder" charge.

Temple also claims that it was error to submit the issue of premeditated murder, asserting that, "If there was premeditation, it was instantaneous."

The premeditation required in order to support a conviction of the crime of first-degree murder may involve no more than a moment in point of time. *State v. White, supra*. The evidence would support a jury's finding that Temple had sufficient time to form the requisite intent.

Prior to trial the state was ordered to produce a ballistics report. When the state's ballistics expert was testifying, it developed that the state had inadvertently failed to furnish Temple with the second page of the 3-page report. The missing page contained the information that the slug removed from the victim was "in poor condition with flattened nose and only portions of 3 to 4 lands and grooves useable for comparison purposes." Temple asked for a mistrial. The trial judge refused a mistrial, but struck the expert's comparison testimony and conclusion that "the spent .22 bullet (removed from the victim's body) very probably was fired from this (Temple's) revolver." Error is assigned to the denial of a mistrial.

A suppression by the prosecution of material evidence

favorable to a criminal defendant violates the due process clause of the Fourteenth Amendment irrespective of the good faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

> The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible.

CPE 5. At minimum, such a due process violation requires the granting of a new trial. *Giles v. Maryland,* 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793 (1967).

 The extent to which the prosecution is required to make inculpatory evidence in its possession available to a criminal defendant is a matter within the discretion of the trial court and will not be disturbed on appeal absent a showing of manifest abuse of discretion. *State v. Thompson,* 54 Wn.2d 100, 338 P.2d 319 (1959). Here the state was required to disclose its ballistics evidence. However, even in the absence of an order to produce, due process would have required the state to disclose any *exculpatory* ballistics evidence.

In fact, the evidence of the missing page was not exculpatory. Before it was discovered that the report furnished Temple was incomplete, the state's expert had testified that the slug removed from the victim's body had "a rather flattened nose and [was] in relatively poor condition, and that . . . for examination purposes . . . only portions of the bullet were useable for a comparison purpose." The expert qualified his opinion by saying, "However, since I was only looking at a small portion of the bullet, I would have to be cautious and to be conservative and state that I couldn't absolutely state that this bullet was fired from this gun."

In any event, Temple's conviction was not contaminated by any reprehensible conduct of the state nor by any denial of due process. The ballistics evidence was excluded in its

entirety. The trial judge carefully instructed both orally and in the formal written instructions that the jurors must totally disregard the expert's "ballistics comparison testimony." We find no error.

The companion of the victim was an eyewitness to the homicide. He made a statement to the police some 2 hours after the shooting which was inconsistent with a second statement given to the police and with his testimony at trial. The existence of the first inconsistent statement was brought out by Temple on cross-examination of the witness. When so confronted, the witness said, "I think I was in extreme shock at the time and I didn't really know what I was saying . . ." To rehabilitate the witness, the state called the detective who had taken the first statement. The detective testified that shortly prior to the taking of the statement the witness learned that his companion was dead, whereupon he "came completely apart . . . he started crying, and then he went on through a very emotional outburst." Temple contends that this testimony was irrelevant and inflammatory and that it was elicited to create sympathy for the victim and the witness.

■ Reasonable latitude should logically be permitted in rehabilitating a witness whose credibility has been attacked.

> It seems obvious that there may often be reasons and explanations for prior inconsistent statements and that the witness should in all fairness be given some opportunity to explain such statements when the witness has *admitted* making them in answer to foundation questions put to him upon cross-examination. Accordingly, in such a situation the witness upon redirect examination is permitted to explain the circumstances surrounding, and the reasons for making, such statements. The explanation should be relevant in the sense that it is somehow explanatory.

(Footnotes omitted.) 5 Meisenholder, Wash. Prac. § 297 (1965).

Necessarily, the extent of rehabilitative testimony must be a discretionary determination by a trial judge. *Wheeler*

*v. F. A. Buck & Co.,* 23 Wash. 679, 63 P. 566 (1901). We see no logical reason why rehabilitative testimony should necessarily be limited to that of the witness himself. We find no abuse of discretion.

Temple next claims that the accumulation of prejudicial incidents and misconduct of counsel denied him a fair trial and requires reversal in accordance with *State v. Simmons,* 59 Wn.2d 381, 368 P.2d 378 (1962). In addition to the assignments of error already discussed, he points out an incident during voir dire of the jury and another during the state's closing argument.

The examination complained of during voir dire was reasonably calculated to enable the prospective jurors to determine whether or not they knew the victim or his family. The procedure followed was reasonable, and the trial judge was well within the bounds of his discretion in permitting it. *See State v. Bromley,* 72 Wn.2d 150, 432 P.2d 568 (1967).

■ During the state's closing argument the deputy prosecutor illustrated the court's instruction on manslaughter with examples which Temple now claims were misleading and highly improper. Temple neither objected to the argument nor requested a curative instruction. Nor does he cite any authority to support his argument. Our review of the argument satisfies us that the statements complained of were not so prejudicial that the error, if any, could not have been corrected by curative instructions or admonitions. *State v. Dennison,* 72 Wn.2d 842, 435 P.2d 526 (1967). Viewing the trial record in its entirety and considering the cumulative impact of the occurrences assigned as error, we conclude that Temple had a fair trial.

■ Temple finally assigns error to the denial of certain pretrial motions. He makes no argument in his brief in support of his assertions. Rather, he refers us to a motion to suppress in the transcript and to that portion of the statement of facts which covers his argument before the trial judge. Because of Temple's failure to argue this assignment in his brief, and because the assignment is not meritorious

on its face, we do not consider it. *State v. Hunter,* 3 Wn. App. 552, 475 P.2d 892 (1970).

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.