## D. H. SKINNER, Appellant, v. LAURA RAYNOR.

**Negotiable Instruments:** GOOD FAITH BUYER. Where the evidence
satisfies the court that one to whom a negotiable instrument was
indorsed before maturity, had knowledge before the transfer that
the instrument was without consideration, he cannot enforce its
payment.

*Appeal from Taylor District Court.*—HON. W. H. TED-
FORD, Judge.

WEDNESDAY, OCTOBER 9, 1895.

Action upon a promissory note and for the fore-
closure of a real estate mortgage given to secure the
payment of the note. There was a decree for the defend-
ant, and plaintiff appeals.—*Affirmed.*

*T. E. Clark* and *L. T. McCoun* for appellant.

*Chas. Thomas* and *Jackson & Miller* for appellee.

Rothrock, J. The note and mortgage which are
the subject of the action were executed on the sixteenth
day of October, 1889. The following is a copy of the
note: "October 16, 1889. On or before October 16,

1892, after date, for value received, I promise to pay to J. E. Hill, agent for F. M. Morris, or order, the sum of one thousand dollars, with interest from date at eight per cent. per annum, payable annually. Should any of the interest not be paid when due, it shall bear interest at same rate as principal per annum. If the note is not paid when due, and suit is brought thereon, the holder shall be allowed to recover reasonable attorney's fees. Laura Raynor, Joseph Raynor, by Laura Raynor, His Attorney in Fact." The mortgage was drawn in the usual form, and with the same signatures as were made to the note. Hill, the alleged agent for Morris, held the note until July 21, 1892, when he indorsed the same to D. H. Skinner, the plaintiff herein. The indorsement was in these words: "For value received, I hereby sell and assign the within note to D. H. Skinner, without recourse. F. E. Morris. J. E. Hill, Agent for F. M. Morris." The defendant did not deny her signature to the note and mortgage. Her defense is that they were wholly without consideration, and that the plaintiff Skinner is not an innocent purchaser for value, but that he took the instruments with knowledge that they were executed without any consideration. It appears from the evidence in the case that at the time the note and mortgage were executed the defendant was the wife of Joseph Raynor, and that an action for a divorce was contemplated or about to be commenced by her husband. Hill, who claims to be the agent of one Morris, was defendant's attorney and adviser. The note and mortgage were made for the purpose of protecting defendant's property as against her husband. The instruments were prepared by Hill, and he took the same with the signatures as above shown. The defendant claims that no money was paid to her by Hill, but that he executed a release of the mortgage and delivered it to her to protect her from any liability on the same, and that long afterwards Hill wrongfully

obtained possession of the release and destroyed it. Hill's contention is that after he sent the mortgage to the recorder's office to be recorded defendant requested him to make out a release of the mortgage, which he did, and delivered it to her, and that afterwards defendant changed her mind and wanted the money on the mortgage, and he paid it to her, but defendant did not return the release. The fact is that the defendant removed to Chicago and took the release with her, and Hill went there more than a year after the mortgage was executed, obtained possession of the release, and destroyed it. There is a conflict in the evidence as to whether the release was destroyed with the consent of the defendant. The very great preponderance of the evidence is to the effect that Hill obtained possession of it, and thrust it into a stove and burned it, against the protest of the defendant. If he had paid the one thousand dollars for the note and mortgage, his act in destroying the release was not particularly reprehensible.

We have examined the evidence fully upon the question whether Hill paid the money to the defendant, and we concur with the district court in the finding that no money was paid, and that the transaction was a mere sham intended to protect the property of the defendant. We will not set out the testimony of the witnesses. The testimony of the defendant that no money was paid is strongly corroborated by many facts and circumstances connected with the transaction. The very form of the execution of the note, for which an attorney at law claims he paid one thousand dollars for a principal who intrusted him with money to loan, is suspicious. No claim is made that the annual interest on the note was either demanded or paid. And it does not appear that Morris, the alleged principal, knew of the transaction, or that he has at any time since had notice of it. Hill testified on the hearing as

follows, in reference to that fact: "I don't know that
he [Morris] knows that this transaction took place."
Hill testified that he paid the one thousand dollars to
defendant in currency which he had in a safe in his law
office, and that he wrote letters to defendant request-
ing a return of the release, but that he kept no copies
of the letters. The defendant denied that she received
any such letters. These and many other circumstances
which are developed in the case, not the least of which
is the fact that Hill was the defendant's attorney and
confidential adviser in her business affairs, leave but
little doubt that the note was without consideration.

II.   As we have found that the note and mortgage
were given without consideration, the remaining ques-
tion is, was the plaintiff herein an innocent purchaser
of the note, without notice of the want of considera-
tion?   It will be observed that the assignment or
indorsement was made before the note became due.
But it has long been a universal rule that where it is
shown that a note or bill is tainted with fraud in its
inception, or that it was wholly without consideration,
the burden is on the party who seeks to enforce pay-
ment to show that he gave value for the instrument,
and that he had no notice of its invalidity as between
the maker and payee. *Lane v. Krekle*, 22 Iowa, 399.
Plaintiff testified that he had no notice of the infirmity
or want of consideration of the note, and that he paid
a full and valuable consideration therefor. The defend-
ant testified that, at or about the time of the original
transaction, she related the whole affair to the plaint-
iff and advised and counseled him about it. We are
satisfied that the finding of the court below on this
question was correct. The plaintiff claims that he
paid Hill one thousand one hundred and fifty dollars
in cash for the note. As we read the evidence, which
we need not repeat here, it is extremely doubtful if the
plaintiff had at or about that time any such sum of

money to invest in the purchase of the note and mortgage. The case demands no further consideration, and the decree of the district court is *affirmed*.