[No. 5650. Decided November 17, 1905.]

ED. S. KEENE, *Respondent,* v. WALLACE C. BEHAN *et al.,* *Appellants.*[1]

BILLS AND NOTES—ACTIONS—DEFENSES—USURY—BURDEN OF PROOF. In an action by the indorsee of promissory notes, shown to be usurious and void in the hands of the original payee, the burden of proof is upon the holder to show that he acquired the notes before maturity, for value and in good faith, without notice of the usury.

SAME—CONSIDERATION—TITLE OF PAYEE—WHEN DEFECTIVE. Under Laws 1899, p. 350, § 55, the title of a person who negotiates a promissory note is defective where the only consideration therefor was unlawful usury exacted on a former note between the same parties.

SAME—EVIDENCE OF GOOD FAITH—NECESSITY. Under Laws 1899, p. 350, § 52, the burden of proof is upon the holder of a usurious note, to show affirmatively the facts constituting good faith upon his part, and that he had no notice of the defect, and it is not sufficient for him to prove that he acquired the notes before maturity for value.

SAME—SUFFICIENCY. The claim that an indorsee acquired usurious notes before maturity, without notice of the usury, is not sustained where his testimony is uncorroborated, and it appears that he acquired the same at a heavy discount under suspicious circumstances, after one of the series was overdue, which he claimed not to have purchased, and after all had been declared due, that he demanded payment of all of them before his first one matured, that the former holder demanded payment after the date on which the indorsee claims to have bought them, and where he failed to state the circumstances under which he bought.

1Reported in 82 Pac. 884.

Appeal from a judgment of the superior court for King county, Bell, J., entered January 7, 1905, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, foreclosing a chattel mortgage. Reversed.

*Hastings & Stedman,* for appellants.

*Blaine, Tucker & Hyland,* for respondent.

CROW, J.—Action to foreclose a chattel mortgage. From a judgment and decree in favor of respondent, this appeal has been taken.

On April 21, 1904, appellants, Wallace C. Behan and Mae Behan, his wife, executed and delivered to one R. O. Reed seven promissory notes, six for the sum of $12.50 each, one falling due May 10, 1904, and one each month thereafter; and the seventh note for $84.50, falling due November 10, 1904. All of said notes bore interest from date at the rate of one per cent per month, payable monthly, and contained a stipulation that, if said interest was not so paid, the whole sum of both principal and interest might be immediately declared due and payable, at the option of the holder. Appellants, on said April 21, 1904, also executed and delivered to said R. O. Reed, as security for said notes, the chattel mortgage now sought to be foreclosed; which provided that, in case of failure to pay any part of the principal or interest when due, the mortgagee might declare the whole debt immediately due and payable.

Respondent, Ed. S. Keene, alleged that on June 8, 1904, he purchased, for value and before maturity, all of said notes, except the one which had previously matured on May 10; that no payment of either principal or interest had been made on any one of said seven notes; and that those purchased by him had been indorsed without recourse by said R. O. Reed.

Appellants denied that respondent was a purchaser in good faith or for value or before maturity, and alleged that

all of said notes were without lawful consideration; that said Reed and one R. W. Barto were partners, under the firm name of Barto & Reed, and that said notes, although payable to Reed, were held by said firm as a partnership asset; that on or about May 16, 1901, appellants borrowed $200 from said Barto & Reed, at the rate of five per cent per month interest, and executed and delivered to said R. O. Reed, for said firm, their certain notes and chattel mortgage of that date, to the total amount of $238, bearing interest at the rate of one per cent per month; that appellants paid $176.20 thereon, prior to December 11, 1902, at which time said Barto & Reed required them to execute renewal notes for $190, bearing interest at one per cent per month; that prior to April 1, 1904, appellants had paid the further sum of $84.56 on this second series of notes, so that the entire payments made by them amounted to $260.76, more than sufficient to pay said original loan and all interest thereon at the maximum rate allowed by law; that on or about April 1, 1904, said Barto & Reed pressed appellants for another series of renewal notes to evidence the usurious interest on said former loan; that appellants, being in financial distress and threatened with litigation, afterwards executed said chattel mortgage and notes of April 21, 1904, to the amount of $159.50; that the only consideration therefor was the unlawful usury exacted by said Barto & Reed; and that respondent was not a *bona fide* purchaser for value, but knew that appellants had a complete defense. These affirmative defenses were denied. The trial judge made findings of fact and conclusions of law in favor of respondent, and refused those requested by appellants.

This is an action in equity, and is now before us for trial *de novo*. There is no dispute as to the usurious nature of the contracts between Barto & Reed and appellants, or that the rates of interest contracted and collected were in violation of § 7, chap. 130, Laws 1899, p. 128. All of the allegations made by appellants were sustained. In fact, no attempt was

made by respondent to controvert or rebut their evidence. He based his right to recover solely upon his claim that he became holder of six of said notes, in due course, for value and before maturity. We shall, therefore, consider this case on the theory that, as between Reed and appellants, said notes were fraudulent and void. Appellants contend that, as soon as they proved the notes were without consideration, the title of Reed was shown to be defective, and the burden of proof then fell upon respondent to show that he had acquired title as holder in due course; that, in doing so, he must not only show that he had acquired said notes before maturity and for value, but, also, that he took the same in good faith, and that, at the time the notes were negotiated to him, he had no notice of any infirmity therein, or defect in the title of Reed. This contention is sustained, not only by the decisions of numerous courts of last resort, but also by §§ 52, 55, 56, and 59 of our negotiable instruments law, chap. 149, Laws 1899, pp. 350, 351. See, also, Crawford's Ann. Negotiable Instruments Law (2d ed.), p. 59, note b; *Canajoharie Nat. Bank, v. Diefendorf,* 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; *Fawcett* v. *Powell,* 43 Neb. 437, 61 N. W. 586; *Skinner v. Raynor,* 95 Iowa 536, 64 N. W. 601; *Vosburg v. Diefendorf,* 119 N. Y. 357, 23 N. E. 801, 16 Am. St. 836; *Knox v. Williams,* 24 Neb. 630, 39 N. W. 786, 8 Am. St. 220. The learned trial judge held against the contention of appellants as to the burden of proof, which probably accounts for the decree entered.

Section 55 of the act of 1899 provides:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

In view of the facts above stated, we think that, under this

section, the title of the original payee Reed was defective when he negotiated the notes. Section 59 provides:

"[Every] holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The title of Reed being defective, the burden was on respondent to show that he acquired title as holder in due course. Section 52, defining a holder in due course, reads:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Respondent testified that he purchased the notes before maturity for value, but did not attempt to show any further facts. After appellants had shown the title of Reed to have been defective, the burden devolved upon respondent to show, (1) that he took the notes not only for value but, also, in good faith; in other words, he was required to affirmatively show facts constituting good faith upon his part; (2) that, at the time the notes were negotiated to him, he had no notice of any defect in the title of the person negotiating them. This he did not endeavor to do. Section 56 reads as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts

that his action in taking the instrument amounted to bad faith."

If it appears from the evidence that respondent had knowledge of the defect in Reed's title, or knowledge of such facts that his action in taking the instruments amounted to bad faith, then he did not show that he was a holder in due course.

After a thorough examination of all the evidence, and carefully weighing the same, and being guided by the principles above announced, we find respondent was not a holder in due course. The evidence shows that, in the hands of Reed, or the firm of Barto & Reed, the notes were without a legal consideration, and were void. Respondent claims to have purchased six of said notes on June 8, 1904, paying $125, not by check, but in cash. On June 9, he immediately notified appellants by letter that he had bought the notes, saying, "Kindly call and give them attention at once." Appellants alleged and proved that, prior to June 8, all seven notes had been declared due by Barto & Reed, and also alleged that respondent, having knowledge of this fact, had purchased all of said notes, including the one then by its terms past due. Respondent denies that he purchased the first note. If this is true, and if he did not know the notes had all been declared due, why did he in his letter of June 9 demand settlement of all the notes held by him, his first note not maturing until June 10? According to his own statement, he purchased his six notes, amounting to about $150, for $125 cash, none of them being due and all bearing a high rate of interest, and did this without seeking to learn why Barto & Reed were selling at such a heavy discount. He did not examine the records to ascertain whether he was obtaining a first mortgage lien. He did not know appellants nor their financial standing. He made no inquiry in regard to them, did not examine the mortgaged property, and yet permitted Reed to indorse the notes to him without recourse. He is a money lender, making loans on chattels; yet he

negotiated for these notes in this manner. On June 10 he again demanded full payment of all his notes, although, according to his own theory, he would then be entitled to collect one only, no others being due. He took no formal assignment of the mortgage, but at the trial produced an unacknowledged copy, now a part of the statement of facts.

A short time prior to the commencement of this action, one of the attorneys for appellants called upon him, and asked to see the notes purchased by him. He showed one, but refused to show any others. He was asked, when giving his evidence, whether the note so shown to the attorney was not the one that matured on May 10, and denied that it was, without stating which one was shown. He alleged in his complaint, and evidently knew, that the note which matured on May 10 was unpaid. This note was secured by the chattel mortgage and, being still held by Reed, made Reed a necessary party to this action, he being entitled to a lien on the property to secure its payment. Respondent did not make him a party, nor did he attempt to litigate his rights. Respondent knew the notes provided for monthly payments of interest, which had not been made; that Reed, at his option, could have declared all the notes due for such nonpayment. He also knew that the principal of the first note had not been paid; yet he fails to show any effort on his part to ascertain whether Reed had previously exercised his option of declaring them all to be due.

The evidence of appellant Wallace C. Behan shows that on June 9, the day after respondent claims to have purchased his notes, said Wallace C. Behan was making a payment of $110 to Barto & Reed to redeem some jewelry, on a transaction not pertaining to these notes, and that Barto then requested him to pay $55 of said sum on these very notes, instead of redeeming all of the jewelry. Yet respondent claims he had purchased and obtained possession of his notes on the preceding day. Barto was a witness for respondent, but made no attempt to contradict this testimony, or to

give his version of the sale of the notes made by him to respondent, nor was he asked to do so.

In *Fawcett v. Powell, supra,* the supreme court of Nebraska says:

"The defense of fraud in the inception of the notes held by Mr. Fawcett was established without question—indeed the perpetrators of the fraud for some reason failed to testify. The rule which governs the right of a holder of a note under these circumstances is thus stated in *Violet v. Rose,* 39 Neb. 660: 'It seems that in an action by an endorsee of a promissory note against the maker where the defendant pleads fraud in the inception of the note, the burden is upon the plaintiff to show that he is a *bona fide* holder for value.'"

Respondent is an interested party; hence, in weighing the testimony, we are not compelled to accept his statements, if they do not bear the stamp of credibility, even though uncontradicted. *Canajoharie Nat. Bank v. Diefendorf, supra.* In *Elwood v. Western Union Telegraph Co.,* 45 N. Y. 549, 6 Am. Rep. 140, we find this language, which is quoted with approval by this court in *Coey v. Darknell,* 25 Wash. 518, 65 Pac. 760:

"It is undoubtedly the general rule that where unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption. . . . But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses were disinterested. That qualification must, in the present state of the law, be added. And furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases, courts and juries are not bound to refrain from exercising their

judgment and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached."

It is true that respondent said he purchased the notes for value before maturity, but he utterly fails to state any facts showing the circumstances under which he purchased the same. The entire record shows a studied effort upon his part to avoid obtaining information. In view of all the circumstances, and the undisputed transactions and dealings between the parties, we are compelled to reject, as unworthy of credit, the bare and unsupported statement of respondent that he purchased before maturity, for value, and without notice; and to hold that he has utterly failed to maintain the burden of proof resting upon him to show that he was a holder in due course.

The judgment of the superior court is reversed, and the cause remanded, with instructions to enter judgment in favor of appellants.

MOUNT, C. J., ROOT, DUNBAR, HADLEY, FULLERTON, and RUDKIN, JJ., concur.