[No. 14246.  Department Two.  February 6, 1918.]

FISK RUBBER COMPANY, OF NEW YORK, *Appellant,* v.
JAMES PINKEY, *Respondent.*[1].

BILLS AND NOTES—INDORSEMENT — HOLDER IN DUE COURSE — PRE-
SUMPTION—BURDEN OF PROOF.  The subsequent failure of considera-
tion for notes given for the purchase price of land, is not a defense
to the notes in the hands of a holder in due course, within Rem.
Code, § 3443, where the unimpeached testimony of the holder showed
that the notes fair on their face, were taken for value in ordinary
course, without notice of any infirmity or defect; since the pre-
sumptions of regularity and consideration are vital and the burden
of showing title is met by the holder by making out a *prima facie*
case.

SAME—CORPORATION PAPER—INDORSEMENT — BY OFFICER — HOLDER
IN DUE COURSE.  Where a note payable to a corporation, was in-
dorsed by the corporation by an officer, and used by him as col-
lateral security for his individual note, the indorsee of the collat-
eral cannot be a holder in due course, unless the authority of the
officer to use the corporation paper for his own benefit appears.

Appeal from a judgment of the superior court for
Whatcom county, Pemberton, J., entered June 13, 1916,
upon the verdict of a jury rendered in favor of the
defendant, in an action on promissory notes.  Affirmed
in part and reversed in part.

*Walter B. Whitcomb,* for appellant.
*Hadley & Abbott,* for respondent.

CHADWICK, J.—This is an action upon two promis-
sory notes.  The defense is that there was no consid-
eration for the notes, that they were fraudulently ob-
tained, and that appellant is not a holder in due course.

On August 1, 1912, respondent entered into an exec-
utory contract with the Benton Realty Company for
the purchase of a certain tract of land in Benton
county.  He paid $1,500 in cash and executed a series

[1]Reported in 170 Pac. 581.

of eight notes, seven for $500 each, .and one for $600. At the time the contract was made, the Benton Realty Company had no title or written contract to purchase the land it agreed to sell. On September 12, 1912, it entered into an executory contract with the owner of the land for its purchase. It was the intention of the company that the payments made by respondent should take care of the amounts falling due under its contract with the owner. No further payments were made. On November 3, 1913, the owner began suit to forfeit the contract, making respondent a party to the suit. A decree forfeiting the contract and quieting the title in the owner was entered on the 5th day of January, 1916. Summons was served on the 2d day of February, 1914.

Shortly after these transactions were had, all of those who had been in any way connected with the active management of the affairs of the Benton Realty Company retired, leaving the business, such as it was, to the active management of F. P. Maguire, its president.

The company owned a Hudson automobile. One Tuttle was engaged in the automobile business at Walla Walla under the trade-name of Franklin Motor Car Company. Maguire, who, so far as the record shows, was a man of good standing, had been accustomed to patronize Tuttle, paying him for goods and services with checks drawn by the "Benton Realty Co." In the spring of 1913, Maguire sought to trade the Hudson automobile for a Franklin car valued at approximately $1,000. He offered the Hudson car and one of the notes of the respondent. The trade was made, and the note was paid when due. Before taking the note, which was indorsed "Benton Realty Co., By F. P. Maguire, Pres.," Tuttle made inquiry of a brother-in-law of respondent then living in Walla

Walla, who informed him that the note was "as good as gold" and "absolutely gilt edged."

On June 26, 1913, Maguire bought back the Hudson car, giving a second one of respondent's notes as collateral. The memorandum of the sale is as follows:

FRANKLIN MOTOR CAR Co.
Invoice.
Walla Walla, Wash., 6-26-13.

Sold to F. P. McGuire
   Benton Realty Co., Kennewick Co.
              Hudson 20 Model 21          $500
   Settled by note due Aug. 23, 1914.
   Secured by Jas. Pinkey note of $500 due Aug. 23, 1914.
   Jas. Pinkey note to be mailed us from Kennewick.
                                  O. K.  R. H. Tuttle.

At a later date, Tuttle sold Maguire another Franklin machine for which he took Maguire's notes, $300, payable October 1, 1914, and $700, payable February 1, 1915. Maguire agreed to send two notes made by respondent as collateral. One of them, due August 1, 1915, is the second note sued on and described in the second cause of action. The note was indorsed "Benton Realty Co., By F. P. Maguire, Pres." The following is the memorandum of this sale:

FRANKLIN MOTOR CAR COMPANY
Walla Walla, Wash.
Sold to F. P. Maguire, Kennewick, Wash.
       Franklin Model D No. 14165 Torpedo.
   Settled by two notes $300. Oct. 1, 1914.
                       $700. Feb. 1, 1915.
   James Pinkey 500.00 due Aug. 1, 1914
                600.00  "   Feb. 23, 1915
      To be sent as
      collateral.
                                  R. H. Tuttle.

The notes were used by Tuttle as collateral to his account with the Northwest Auto Company, and later with the Fisk Rubber Company, the appellant. The notes were dishonored when due. A motion for a non-

suit was made at the close of appellant's case, and for a directed verdict when all the evidence was in.

Because of the great hardship to one who is called upon to pay an unrighteous debt, we have considered the statement of facts with more than ordinary care. We shall first consider the note due August 1, 1914. Although it is plain that respondent is the victim of the evil machinations of Maguire, we find no evidence upon which a recovery can be denied.

Respondent executed the note and gave it currency. His signature is not denied. The note had been given for a good consideration which at that time had not failed. The transaction was not out of the ordinary, and the note was fair upon its face. If there was any duty upon Tuttle to make inquiry, it was fully performed when he made independent inquiry as to the financial standing of respondent. If Tuttle had inquired, he would have been told that the note was a binding obligation, for, at that time, respondent had no notice of any defect of title, if, indeed, it can be said in law that there was any at that time, all of which is evidenced by the fact that he paid the note given for the first machine when it fell due.

Tuttle took the note for value, in good faith, and before maturity. He became a holder in due course.

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Rem. Code, § 3443.

While this court has been liberal to the extent of generosity in its construction of the negotiable instruments law, we have never held that a mere denial of liability, or a plea of no consideration, or failure of consideration, would put a holder to a greater burden than to show that the instrument was acquired in due course. Rem. Code, § 3450. When this is done, and it may be done by the unimpeached testimony of the holder, the burden is met, and it is then upon the maker to show, not a defect in title, for that is not in itself a defense (Daniels, Negotiable Instruments, § 814), but that the holder is not a holder in due course. A court may inquire into all the facts, and when a course of dealing, or other circumstance, tending to impeach the instrument is shown, it is for the jury to say whether the holder knew, or ought to have known, of an infirmity in the paper. *Rohweder v. Titus*, 85 Wash. 441, 148 Pac. 583; *Ireland v. Scharpenburg*, 54 Wash. 558, 103 Pac. 801; *Union Inv. Co. v. Rosenzweig*, 79 Wash. 112, 139 Pac. 874.

On the other hand, if there be no showing of fact or circumstance amounting to bad faith, or from which the jury can say the holder should have inquired, a recovery may be had.

Great reliance is put upon the remark of this court in *Rohweder v. Titus, supra:*

"He was an interested party and, under repeated holdings of this court, his credibility and the truthfulness of his statements, although undisputed by the evidence of any witness, were for the consideration of the jury."

When read in connection with the context and a positive holding that there were "circumstances surrounding the parties which tended to dispute appellant's claim," the quoted portion of the opinion is tolerable, but it is not in itself a correct statement of

the law. Similar expressions are to be found in *Coey v. Darknell,* 25 Wash. 518, 65 Pac. 760, and *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884. But there were circumstances sufficient to put the holder on inquiry. No case is cited, nor do we find any, where a recovery has been denied where the testimony of the holder is in no way impeached by fact or circumstance. To so hold would be to write the negotiable instruments law off the books and practically declare that the mere taking of the stand as a witness by the holder would be enough to carry a case to the jury solely because of the interest of the witness. If that were so, it would permit a jury to return a verdict against a holder in due course for no other reason than that the consideration had failed, whereas, in the case relied on, we find "this [that he was a holder in due course] could be established by his evidence only."

The distinction between the rule of *Ireland v. Scharpenburg, supra,* and like cases, and a case where the good faith of the transaction is shown and is not impeached by witness or circumstance, is made clear in *Scandinavian American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102.

" 'The payment of value for negotiable paper is a circumstance to be taken into account with other facts, in determining the question of the *bona fides* of the transaction, and when full value is paid, is entitled to great weight. But that fact is never conclusive, *except in the absence of evidence tending to show notice or bad faith.'* "

See, also, *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042; *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907.

Surely the negotiable instruments law will not bind a holder to know or anticipate a state of facts not then

in being but developed long after the acquisition of the note and for which full value was paid.

The most that respondent could claim is that it may as well be inferred that the note given for the Hudson car was the personal obligation of Maguire as that it was indorsed to cover the obligation of the Benton Realty Company. But this is not enough. Respondent's note was taken before due and full value was given for it. There are two propositions of law running through all transactions involving negotiable instruments. A note fair upon its face is presumed to be regular and to have been given for a good and sufficient consideration, and an indorsement in blank is presumed to have been made by the payee or by the last indorsee as the case may be.

These are not arbitrary presumptions. They are consistent with the spirit and purpose of the law to aid the currency of commercial paper, which, because of its growing use in business affairs, came finally to be accorded a dignity in the law merchant equal to that accorded bills of exchange issued upon a deposit of money or goods.

The basic principle upon which paper having defects, either inherent or collateral, is sustained in the hands of a holder in due course is comprehended in the maxim that, where a loss has happened which must fall upon one of two innocent persons, it shall be borne by him who is the occasion of the loss. The one who made the wrong possible is estopped by his neglect.

The requirement of the act, § 3450, that the burden of proof is upon the holder to show title, i. e., his good faith, does not deprive a holder of all attending presumptions. They are still vital, and he is entitled to invoke them in aid of his case. Promissory notes being regarded with favor, it requires strong proof to impeach the title of one who has paid full value before

maturity. The statute does not require more than that the holder make out a *prima facie* case, and in the absence of an apparent defect, the possession, coupled with the proof that the note was taken before maturity and for full value, is enough to satisfy the rule.

"By the rule of the law merchant, which has been incorporated in the negotiable instruments law, every holder of an instrument is deemed *prima facie* to be a holder in due course. In other words the mere possession of a negotiable instrument by the indorsee, or by the transferee where no indorsement is necessary, imports *prima facie* that he is the lawful owner, and that he acquired it before maturity, *bona fide,* for value in the usual course of business, and without notice of any circumstance impeaching its validity. And although the burden of offering evidence may be shifted during the course of the trial, yet when such possession is once shown, the burden is then upon the one seeking to impeach any of the elements of validity or rights of the holder which such possession implies. This presumption continues until overcome by sufficient proof. By presenting the paper the plaintiff makes a *prima facie* case, that is, a case sufficient to justify a verdict or finding for him if the defendant does not rebut it." 3 Ruling Case Law, 1037.

But it does not follow that appellant can recover upon the second note. Tuttle does not by his testimony overcome inferences and conclusions that naturally flow from the written memorandum of the sale and from the face of the note. The jury was warranted in finding that the sale was made to Maguire personally. It is so recited in the memorandum. Maguire's personal notes were taken to evidence the sale. The collateral was a note payable to the Benton Realty Company and indorsed in blank. If effective to pass title, the indorsement became an absolute promise of the corporation to pay the debt, as much so as if Maguire had executed the note of the corporation payable to himself and indorsed it in the same way.

"No person can be a *bona fide* holder of a promissory note executed by an officer in the name of the corporation, and payable to the officer executing it, as an individual. Where an officer of a corporation makes its commercial paper payable to his own order, signs it as such officer, and transfers it in payment of an individual debt, it is held that the transferee is not a *bona fide* purchaser thereof without notice, since the facts appearing on the face of the paper are sufficient to put him on inquiry as to its ownership." 3 Ruling Case Law, 1085.

This rule has long been applied where one partner indorses firm paper to pay his own debts, and where corporation paper is made or indorsed as accommodation paper by an officer. Daniels, Negotiable Instruments, §§ 366, 795C. It is out of the ordinary course of business, and the transaction imports unfairness on its face, and, unless the authority of the officer is made to appear by affirmative proofs, or it is shown that the corporation has acquiesced in or ratified the act, the paper is subject to defenses, although in the hands of one who took it before maturity and for value.

There was a shadow on the note, and as is said in *Rochester & C. Turnpike Road Co. v. Paviour*, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790:

"The defendant could not, in good faith, accept them until it disappeared. By accepting them he did an act which he had reason to believe would affect the rights of a third party, and he could not, in justice to that party, ignore the suspicion which the facts should have aroused. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or implied, which amounts to bad faith, when regarded from a commercial standpoint."

Remanded with instructions to enter a judgment in favor of the appellant on the first cause of action, and a judgment for respondent on the second cause of action. Costs of appeal to appellant.

ELLIS, C. J., HOLCOMB, MORRIS, and MOUNT, JJ., concur.