[No. 16055.  Department Two.  January 21, 1921.]

N. C. LARSEN, *Respondent*, v. J. A. BETCHER,
*Appellant*.[1]

BILLS AND NOTES (124) EVIDENCE (150)—PAROL—EVIDENCE—AD-
MISSIBILITY TO VARY CONTRACT.  A promissory note may not be
varied by parol evidence of an oral agreement that it would be
held by the payee until due unless it was found necessary to use
it as collateral.

SAME (64-1, 127)—BONA FIDE PURCHASER—NOTICE OF INFIRMITY—
FRAUD.  An oral agreement to hold a note until it was due unless
it was found necessary to use it as collateral is not evidence of
any fraud in the inception of the note, nor notice of an infirmity
as defined by Rem. Code, § 3447.

SAME (64, 122)—BONA FIDE PURCHASER—GOOD FAITH—NOTICE—
PRESUMPTIONS.  That a note had its inception in a stock transac-
tion is not sufficient notice to put a purchaser on notice of any in-
firmity, and unless bad faith, as defined by Rem. Code, § 3447, is
shown or can be inferred from the facts, good faith is presumed.

Appeal from a judgment of the superior court for
Spokane county, Hurn, J., entered December 24, 1919,
upon the verdict rendered in favor of the plaintiff by
direction of the court, in an action on a note, after
trial on the merits.  Affirmed.

*E. B. Quackenbush*, for appellant.

*White & Randall* (*F. B. Danskin*, of counsel), for re-
spondent.

TOLMAN, J.—On February 2, 1918, respondent, who
is a farmer and merchant doing business at Farmer,
in Douglas county, in this state, purchased from one
L. B. Simons the note involved in this action, which
was dated January 19, 1918, due one year after date,
for the sum of $1,500, with interest at the rate of eight
per cent, payable at maturity, paying therefor $1,375.
Respondent knew, or might have known, that Simons

[1]Reported in 195 Pac. 27.

was a stock salesman plying his calling among the farmers of that vicinity and he had theretofore been solicited by Simons to purchase such stock, and had refused to consider the matter, and knew nothing whatever of the merits or value of the stock. Being approached upon the matter of the purchase of the note, he first gave an evasive answer, but finally, knowing the maker of the note, and believing him to be financially responsible, he agreed to meet Simons in Waterville where the note was submitted to two bankers, one of whom pronounced the endorsement of one Miller, which was already on the note, to be genuine, and both gave their opinion to the effect that the note was good. Thereupon respondent purchased the note and gave Simons a check for the purchase price. The stock afterwards proved to be worthless, but even appellant Betcher was not aware of that fact until May or June following.

The case was tried to a jury, and at the close of all the testimony, the trial court instructed the jury to render a verdict in favor of the plaintiff, respondent here, for the amount of the note, with interest. From a judgment on the directed verdict, this appeal is prosecuted.

It is appellant's contention that the facts and circumstances under which respondent purchased the note were such as required the submission to the jury of the question of his good faith. Our negotiable instrument statute, Rem. Code, § 3443, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

And it appears to be admitted that the facts were such as to warrant the court in determining, as a matter of law, that all of these conditions existed, except the one of good faith, and there being evidence offered tending to show that the execution of the note was fraudulently procured, appellant urges that, under Rem. Code, § 3450, the burden was on the respondent to establish all of the elements necessary to constitute a holder in due course. Assuming, for present purposes, but not deciding, that appellant correctly construes this latter section of the statute, we must also bear in mind Rem. Code, § 3447, which reads:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Appellant's argument is based upon his cross-examination of respondent, from which it appears that, although Simons had solicited him to buy stock, he had refused without any investigation, because it was his fixed purpose not to buy that of which he knew nothing; that he had reason to suppose that Simons was endeavoring to sell stock of some kind to farmers generally and that this note had been given in such a transaction, and that he did not inquire personally of appellant Betcher before purchasing the note; though if he had done so he could have learned only that Simons had orally agreed with Betcher that the note was to be sent to the company whose stock Betcher was purchasing, and would be held by the company until due unless it was found necessary to use it as collat-

eral. Such an oral agreement cannot be shown to vary the terms of a written instrument (*Bryan v. Duff,* 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889) ; and would not, if proven, be any evidence of fraud in the inception of the note.

Since our statute provides, as already quoted, that to constitute notice of an infirmity in the title of the person negotiating the note, the person buying it must have had knowledge of the infirmity, or knowledge of such facts that his action in taking the instrument amounted to bad faith, it is apparent that the purchaser of a note, under the statute, acts either in good faith or in bad faith; and unless bad faith, as defined by the statute, is shown, or can be inferred from the facts or circumstances, good faith is presumed.

In the final analysis, the question really urged which we are attempting to discuss, is, in effect, that, as the note arose out of a stock transaction, the jury should have been permitted to find that one knowing, or having reason to believe that a note was so given, could not purchase it in good faith. It may be admitted that farmers and others are all too often fleeced by the sale to them of worthless stock, and the legislature might well take steps to put a stop to this crying evil, but until the legislature does act, we cannot say from our judicial knowledge that all stock transfers are fraudulent, or even that a considerable percentage are so, and much as we would like to protect all who are victimized, we cannot do so at the expense of the innocent, or in defiance of well-established law. Neither can a jury be permitted to draw the inference that one purchasing negotiable paper does so in bad faith merely because he knows the paper had its inception in the purchase of corporate stock.

In *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907, this court held that the fact that a note had its inception in

a stock transaction was not sufficient notice to put a purchaser on notice, and in *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042, the rule by which the good faith of a holder of negotiable paper is determined is quoted from Crawford's Annotated Negotiable Instrument Law (3d ed.), p. 68, as follows:

"The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala·fide,* his title, according to settled doctrines, will prevail."

This rule we have consistently followed. *Scandinavian-American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220, 170 Pac. 581. The authorities upon which appellant relies are all distinguishable upon the facts. Since the evidence discloses no fact or circumstance from which the jury would be justified in drawing the conclusion that respondent acted in bad faith, the court did not err in directing the verdict.

Error is assigned also upon the limiting of the appellant's cross-examination of respondent. We have carefully studied the record and cannot find that there was any error in this respect.

The judgment is affirmed.

HOLCOMB, MITCHELL, MOUNT, and MAIN, JJ., concur.