[No. 16964. Department One. May 13, 1922.]

CHAS. H. ALLEN, *Respondent,* v. RAY LANDRE,
*Appellant.*[1]

JUDGMENT (54)—NOTWITHSTANDING VERDICT. Judgment n. o. v.
should not be granted unless it can be said as a matter of law that
there is neither evidence nor reasonable inference from evidence to
sustain the verdict.

BILLS AND NOTES (141)—BONA FIDE PURCHASERS—GOOD FAITH—
NOTICE OF INFIRMITIES—EVIDENCE—SUFFICIENCY. Whether plaintiff
was a bona fide holder of a note, given for stock in a company,
within the negotiable instrument law, Rem. Comp. Stat., §§ 3443,
3447, is a question for the jury, where the agent of the corporation
procured the note by fraud, and there was some proof of confi-
dential business relations between the agent and holder, who allowed
the agent to falsely represent to the maker that the holder was the
attorney for the company.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered July 14, 1921,
in favor of the plaintiff, notwithstanding the verdict
of a jury rendered in favor of the defendant, in an
action on a promissory note. Reversed.

*D. V. Morthland* and *A. W. Hawkins,* for appellant.
*Thos. H. Wilson,* for respondent.

BRIDGES, J.—One Etheridge, an agent of a corpora-
tion known as the U. S. Potash-Nitrate Company, sold
to the defendant, who was a merchant in a small com-
munity in central Washington, certain stock of the
nitrate company. The defendant gave his note for the
purchase price in the sum of $500, payable six months
after date. Before the due date of the note, it came into
the hands of the plaintiff, who, after it became due,
sued thereon. The defense was that there was no con-
sideration for the note for the reason that the defend-

[1]Reported in 206 Pac. 845.

ant was induced to purchase the capital stock for which it was given by the false and fraudulent representations of the agent, Etheridge, and that the plaintiff was not a holder of the note for value, and that if he was the holder, he obtained it with knowledge of its infirmities. On these issues the case was tried before a jury, which returned a verdict in favor of the defendant. The plaintiff's motion for judgment notwithstanding the verdict was sustained by the court, who set aside the verdict and made a judgment in plaintiff's favor for the amount sued for. The defendant has appealed.

Practically the sole question here is whether there was sufficient evidence to submit the case to the jury on the question whether respondent purchased the note without knowledge of its infirmities. It seems to be conceded that the testimony concerning the fraud in the procurement of the note was sufficient to require the case to be sent to the jury. There was testimony upon which the jury had a right to conclude the facts to be as follows: That the note was obtained from the appellant by the agent, Etheridge, by false and fraudulent representations; that appellant did not discover such representations to be fraudulent until about the time the note came due; that respondent is an attorney, living at Yakima, and that the appellant is a small merchant, living in the town of Tieton, which is a few miles from Yakima; that some weeks after the note was given, and before appellant learned of the fraud which induced him to buy the stock, the respondent and Etheridge together called at respondent's store in Tieton; that, at that time, appellant did not know the respondent, who was introduced to him by Etheridge, who, in the presence of respondent, told appellant that respondent was the attorney for the nitrate company, and that he was go-

ing around checking up the company's business, which representations respondent did not deny, although he was in no way connected with the company; that thereupon, and without further conversation, the respondent took from his pocket the note in question, and asked appellant if the signature on it were his, which question appellant answered affirmatively; that respondent then asked him if he were going to pay the note, to which appellant replied affirmatively; that thereupon, and without further conversation, the respondent and Etheridge left the store; that appellant did not know respondent claimed to be the owner of the note until the time—or shortly after the time—it came due, at which time he had learned of the fraud and refused to pay the note.

Section 3443, Rem. Comp. Stat., provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:— 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 3447, Rem. Comp. Stat., is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We think the court erred in giving the respondent judgment notwithstanding the verdict. The rule is that a court is not warranted in granting judgment notwithstanding the verdict or in granting a nonsuit un-

less it can be said, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain a verdict. It seems plain to us that, when all of the circumstances are taken into account, there was at least some material testimony tending to show that the respondent was not a *bona fide* purchaser of this note. In the case of *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220, 170 Pac. 581, discussing this question, we said:

"A court may inquire into all the facts, and when a course of dealing, or other circumstance, tending to impeach the instrument is shown, it is for the jury to say whether the holder knew, or ought to have known, of an infirmity in the paper. . . . On the other hand, if there be no showing of fact or circumstance amounting to bad faith, or from which the jury can say the holder should have inquired, a recovery may be had."

If appellant's testimony be true, then respondent's conduct with reference to this note would seem rather unusual and strange. If he were not the attorney or agent of the nitrate company, why did he permit himself to be represented as such? Why did he come to appellant's place of business with the agent, who had been guilty of fraud? Why did he not tell appellant that he intended buying the note? These matters and others shown were at least some proof that there was a confidential business relation between Etheridge and the respondent, and that the latter knew of the infirmities of the note. It may be conceded that this testimony is not strong, and it may be conceded that it appears to us from a reading of the record that the weight of the testimony in this regard was with the respondent, yet it is the duty of the court to uphold the constitutional provision that "The right of trial by jury shall remain inviolate," (Art. 1, § 21).

The judgment is reversed, and the cause remanded with directions to enter a judgment upon the verdict of the jury.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.