142      BANNER MEAT CO. v. RIEGER.

[No. 17606.  Department One.  May 16, 1923.]

BANNER MEAT COMPANY, *Respondent*, v. MINNIE WHIT-
MORE RIEGER, *Appellant*.[1]

BILLS AND NOTES (64-3, 141)—BONA FIDE PURCHASER—DUTY TO
MAKE INQUIRY—EVIDENCE—SUFFICIENCY.  Under Rem. Comp. Stat.,
§ 3447, providing that, to constitute notice of infirmity, the person
taking a note must have actual notice of the defect or knowledge
of such facts as to show bad faith, more than mere suspicion and
failure to make inquiries must be shown; and want of bona fides is
not shown by the taking, at a 10% discount, of a $5,000 note to ac-
commodate a responsible friend, upon representations that the maker
was worth $100,000 and that the note would be paid when due;
although it was outside of the ordinary course of business.

SAME (64-3).  The taking of a note without recourse does not
affect its negotiability or arouse the suspicion that there are equitable
defenses against it.

Appeal from a judgment of the superior court for
Garfield county, Miller, J., entered August 4, 1922,
upon the verdict of a jury rendered in favor of the
plaintiff by direction of the court, in an action on a
promissory note.  Affirmed.

*C. E. H. Maloy,* for appellant.
*Ferris & Ferris,* for respondent.

BRIDGES, J.—Before its maturity, the respondent
purchased a promissory note which had been made by
appellant and which had been obtained by fraud.  The
trial court held that there was nothing in the testimony
tending to show that respondent had purchased in bad
faith or without consideration, and instructed the jury
to bring in a verdict for respondent for the amount
due on the note.  The correctness of this ruling is the
chief question involved in this appeal.

[1]Reported in 215 Pac. 334.

The note in question was for $5,000, was executed by the appellant, and made payable to the order of one G. R. Ingalls, Jr., due in six months after date, and drawing interest at the rate of eight per cent per annum. This note is in form negotiable and fair upon its face. The payee endorsed the note to one Tierney, who, in turn, endorsed it to one C. E. Moore, from whom the respondent purchased it before maturity. One E. E. Urton was president of the respondent, which is a corporation operating two retail meat shops, one at Davenport, in Lincoln county, this state, and one at Harrington, in the same county. Mr. Urton lived at Davenport and managed the store there, and Mr. Moore lived at Harrington, where he was engaged in business. Mr. Urton's brother managed the meat shop at the latter place. Urton and Moore had been close friends for a number of years. One day, when he was in Harrington, Urton called on his friend Moore, as was his habit. The latter told him he was in need of some ready money, and would like to sell to the respondent the appellant's note above mentioned. He offered to discount it ten per cent. At that time, Mr. Moore, who was himself financially responsible, informed Mr. Urton that the appellant's note was perfectly good, and that she was worth $100,000 or more. and that the note would be paid when due, and gave Mr. Urton a description of a large tract of land which he said appellant owned. After consulting with his brother, Mr. Urton, acting on behalf of his company, agreed to purchase the note, largely as an accommodation to his friend Mr. Moore, and at once gave his check in payment therefor in the sum of $4,500, and received the note, endorsed by Mr. Moore without recourse.

During the negotiations for the purchase of the note, Mr. Moore had told Mr. Urton that he would have to make certain financial statements to his bank, and that he would endorse the note "without recourse" in order that he would not have to include in his statements a contingent liability on account of his endorsement of the note. When the note came due it was put in a bank for collection, and payment refused, the appellant contending, and finally answering, that the note was fraudulently obtained by the original payee, and that the respondent was not a purchaser in good faith and for value. At the trial it was conceded that the original payee of the note obtained it by means of fraudulent representations. Mr. Urton, who was the chief witness in the case, testified that his company purchased the note in good faith and without any knowledge of any infirmities, and for a valuable consideration.

The testimony which the appellant contends was sufficient to carry the case to the jury was chiefly brought out by her cross-examination of Mr. Urton. He admitted that, when he purchased the note, he did not make any inquiry concerning the matter other than as above indicated, stating that Mr. Moore informed him that the note was perfectly good, and that he relied entirely upon those representations; that he had the utmost confidence in Mr. Moore. He admitted that his company was not in the habit of buying notes, and that he bought this note largely to accommodate Mr. Moore. He did not make any inquiry whether the land belonging to the appellant was mortgaged or was community property, because he relied on the statements of Mr. Moore as to the value of the note. He admitted that he took only a ten per cent discount in the purchase of the note, when the customary discount was about fif-

teen per cent, but stated that, inasmuch as he was dealing with his friend, he thought the $500 discount, together with the accrued interest, was a sufficient profit, particularly on a note which was soon to fall due.

The cross-examination also threw some doubt as to the time when the words "without recourse" were put on the note following Mr. Moore's name. Mr. Urton testified that he believed it was put there at the time he bought the note. There was some testimony tending to show that "without recourse" was written in a different color of ink than the name "C. E. Moore", and that "without recourse" must have been placed on the note sometime after it was sold.

We think there was an entire absence of testimony tending to show that the respondent was not a *bona fide* purchaser. Our negotiable instruments act defines who is a holder in due course. It being quoted in full in the recent case of *Allen v. Landre,* 120 Wash. 171, 206 Pac. 845, and other of our cases, we do not consider it necessary to repeat it here. Section 3447, Rem. Comp. Stat. [P. C. § 4127], being a part of the negotiable instruments act, reads as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Before the enactment of the negotiable instruments acts in the various states, the prevailing view seems to have been that, if there were any such suspicious circumstances accompanying the transaction as would induce a reasonably prudent man to inquire into the title of the holder or the consideration, he would be bound to make such inquiry. Diligence was made the

criterion. But, since the passage of those acts, it is generally held that mere ground for suspicion as to the existence of defenses to the instrument is not equivalent to knowledge thereof by the purchaser, and failure on his part to make such inquiries as a reasonably prudent person would make will not defeat his claim as a purchaser in good faith. Of course, any unusual course of dealing or suspicious circumstances may be offered in evidence as tending to prove that the purchaser had knowledge thereof and that he had not acted in good faith in making the purchase.

In *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 822, 133 Am. St. 1042, we said:

" 'The holder (of a negotiable instrument) is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith.' "

This doctrine is supported by a number of our cases, among them *National City Bank v. Shelton Electric Co.,* 96 Wash. 74, 164 Pac. 933, and *Larsen v. Betcher,* 114 Wash. 247, 195 Pac. 27. See, also, 3 R. C. L. 1071 *et seq.*

But the appellant contends that the fact that the respondent made no investigation of the payee of the note, made no inquiry about the maker other than as above related, took Mr. Moore's indorsement "without recourse", accepted a less discount than was usual, and did not sue the endorsers on the note, together with the further fact that it did not make a business of buying such paper, all tend to indicate that the note was purchased in bad faith. Nearly all of these so-called suspicious circumstances are met and entirely answered by the proof that the respondent purchased this note as an accommodation to a friend of its president,

and that that friend represented the maker of the note to be financially good, and that the note would be paid when due. It is true Mr. Moore and one other of the endorsers were residents of the county where the respondent carried on its business and that it did not sue them, but went out of the county to sue the maker alone. If this could be considered a suspicious circumstance, it was amply explained. Mr. Urton, who purchased the note for the respondent, had very little knowledge of Mr. Tierney, one of the endorsers and a resident of Lincoln county, and, of course, respondent had no legal recourse against Mr. Moore, who had endorsed "without recourse." It is also true, as we have before noted, that the testimony causes some doubt to exist as to when the words "without recourse" were written on the note, but it is difficult for us to understand how this can in any wise affect the question we are considering. It is shown, without contradiction, that, at the time the purchase negotiations were being carried on, it was agreed that Mr. Moore would endorse the note without recourse against him. Under such circumstances, it would seem to be immaterial when the words "without recourse" were indorsed on the note. The courts generally hold that putting these words on a note does not affect its negotiability, nor is it sufficient to arouse suspicion that there are equitable defenses against it. 3 R. C. L. 1078. Indeed, § 3429, Rem. Comp. Stat. [P. C. § 4109], says:

"A qualified indorsement constitutes the endorser a mere assignor of the title of the instrument. It may be made by adding to the indorser's signature the words "without recourse" or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument."

See, also, 7 Cyc. 809; *Leavitt v. Thurston,* 33 Utah 351, 113 Pac. 77.

The appellant greatly relies on *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884; *Union Investment Co. v. Rosenzweiz,* 79 Wash. 112, 139 Pac. 874; *Ireland v. Scharpenberg,* 54 Wash. 558, 103 Pac. 801; *Rohweder v. Titus,* 85 Wash. 441, 148 Pac. 583; and *Allen v. Landre, supra.* The facts of these cases are entirely different from those here, and it would serve no useful purpose to prolong this opinion by pointing out such distinctions.

Taking the case all in all, it is perfectly clear to us that the transaction was an everyday one, and that there was nothing in the evidence tending to show that respondent (using the words of our statute) "had actual knowledge of the infirmity" of the note "or knowledge of such facts that his action in taking the instrument amounted to bad faith," and that there were not even suspicious circumstances which would have put an ordinarily prudent man on inquiry.

The court did not err in refusing to receive in evidence certain papers marked defendant's exhibits 2, 3 and 4. They were incompetent and immaterial. Judgment affirmed.

MAIN, C. J., HOLCOMB, MITCHELL, and MACKINTOSH, JJ., concur.