[No. 17637.   *En Banc*.   February 16, 1924.]

FIRST NATIONAL BANK OF HARRINGTON, *Respondent*, v. F. E. DOTSON, *Appellant*.[1]

BILLS AND NOTES (42, 44)—BONA FIDE PURCHASERS—HOLDER IN DUE COURSE—EVIDENCE—SUFFICIENCY. It is a question for the jury to determine whether a bank, holding a note in due course as collateral security, endorsed in blank, delivered the same to the maker with intent to reinvest him with title, or as an agent to take it to another bank for the purpose of collection, and whether it thereby lost its status as a holder in due course, on its return to it after maturity and after failure to collect, where, under the evidence, there was reasonable grounds for difference of opinion on the subject.

Appeal from a judgment of the superior court for Lincoln county, Truax, J., entered January 30, 1922, in favor of the plaintiff, notwithstanding the verdict of a

[1]Reported in 222 Pac. 886.

jury rendered in favor of the defendant, in an action
on a promissory note. Reversed.

*Samuel P. Weaver* and *Weaver & Furber,* for appel-
lant.

*H. W. Reading* and *Freece & Pettijohn,* for respond-
ent.

PARKER, J.—The plaintiff bank commenced this
action in the superior court for Lincoln county, seek-
ing recovery upon a promissory note executed and de-
livered by the defendant, Dotson, to one Dudman on
March 20, 1920, for the principal sum of $1,200, pay-
able six months after date, the bank claiming to have
acquired the note, as alleged in its complaint, as fol-
lows:

"That on, to wit, March 23rd, 1920, for and in con-
sideration of a loan made by the plaintiff bank to one
John MacInnis in amount of $1,200, the said John Mac-
Innis being, on said date, the owner and holder of the
promissory note hereinbefore described in paragraph
2, did transfer said promissory note by delivery to
the plaintiff bank herein, for the said consideration
with the agreement that said promissory note should
be owned and held by the plaintiff bank herein as col-
lateral for said loan; that on said date the said plain-
tiff bank, for said consideration became the owner and
holder of said promissory note set forth and described
herein in paragraph 2 for said purpose and ever since
has been and now is such owner and holder thereof."

Dotson, by his answer, admitted his execution of the
note, but denied generally that the bank was the owner
or holder thereof at the time of the commencement of
the action; and denied especially that the bank was
then the owner and holder of the note in due course;
and further affirmatively pleaded facts showing want
of consideration for the execution of the note and
fraudulent misrepresentations made by Dudman in-

ducing him to execute the note such as would prevent recovery by Dudman thereon if he were the plaintiff, and such as to put the bank to its proof of having acquired the note in due course before maturity. The bank, by its reply, denied these affirmative allegations of the answer. The cause then proceeded to trial upon the merits before the court sitting with a jury, which trial resulted in a verdict in favor of Dotson. Thereafter the bank moved for judgment awarding to it recovery upon the note notwithstanding the verdict. This motion was by the court granted and judgment rendered accordingly. From this disposition of the cause, Dotson has appealed to this court.

The note in question was given by Dotson to Dudman as a part of what the jury might well have believed from the evidence to be a fraudulent mining stock deal being promoted by Dudman; Dotson being induced to give the note by false and fraudulent representations made by Dudman to him with reference to the value of the mining stock, which in fact was worthless, in consideration of which stock, together with promises made by Dudman with reference thereto which at the time he did not intend to fulfill and never did fulfill, the note was executed by Dotson. We think, for present purposes, it is sufficient to say that we are convinced that the evidence would have warranted the jury in concluding that the note was given without consideration and was executed by Dotson induced by such fraudulent representations, though we do not think, upon the record in this case, it could be so decided as a matter of law. Such a conclusion of fact drawn by the jury from the evidence would, of course, call for a verdict and judgment denying to Dudman recovery upon the note were the plaintiff suing Dotson thereon. The trial judge by his instruction took this question

away from the jury; manifestly, however, not deciding it either way as a question of law, but upon the theory that the evidence called for the conclusion, as a matter of law, that the bank was, at the time of the commencement of the action, holder of the note in due course because of having acquired it in good faith for value before maturity; and that, therefore, the question of want of consideration or fraud impairing its validity as between Dotson and Dudman was foreign to the question of the bank's right of recovery upon the note; though, apart from that question, the court did submit to the jury the question of the bank being the holder of the note, as we shall presently see.

It appears that John MacInnis aided Dudman in inducing Dotson to execute the note. On March 23, 1920, three days after the making of the note, MacInnis and Dudman, claiming to have had some business relations with each other as the result of which Dudman owed MacInnis some money went to the bank evidently with a view of raising money on the note in some manner. Dudman there endorsed his name in blank on the back of the note and evidently then delivered it to MacInnis to the end that MacInnis might use it as his own property. MacInnis then without further endorsement, delivered it to the bank as collateral to an indebtedness owing by him to the bank, which indebtedness was apparently then contracted. The president of the bank testified:

"We did not want the Dudman note, we would rather have MacInnis' note show on our books than the Dudman note, and in place of having the regular endorsement, we took MacInnis' note; we booked MacInnis' note, in place of booking the other note. In place of running the Dudman note through on our books, we had MacInnis' note."

We think the evidence warrants the conclusion that whatever money was then paid out by the bank was paid to MacInnis, though probably MacInnis in turn paid at least some portion of it to Dudman. All we know about this transaction or the claimed business relations between MacInnis and Dudman is what the president of the bank tells us in his testimony. Neither MacInnis nor Dudman testified upon the trial. On September 1, 1920, which, it will be noticed, was a short time prior to the maturity of the note, the bank delivered it back to MacInnis; and here let us be reminded that the note being endorsed in blank by Dudman and thus made payable to bearer, transfer of full ownership of it by the bank to MacInnis could be accomplished by delivery alone. Section 3425, Rem. Comp. Stat. [P. C. § 4105.] The president of the bank testified in substance that the note was then delivered to MacInnis, not with intent to reinvest title to it in him, but to the end that he might, as agent of the bank, take it to the Harrington State Bank and place it therein for collection. Thereupon MacInnis took the note to that bank, leaving it there for collection; that bank being wholly uninformed relative to the note, other than that it appeared upon its face and from MacInnis' possession of it to be his property. On September 8, 1920, that bank sent to Dotson the usual notice of the maturity of the note on September 20th, and that the note was in its hands for collection and asking payment of the amount due thereon, Dotson receiving this notice a day or two later. No response being received from Dotson, on September 30, 1920, ten days after the maturity of the note, it still being in the hands of that bank, its cashier again wrote to Dotson insisting on payment of the note and threatening suit if not paid at an early date. Thus all efforts

to collect the note up to that time were the efforts of
the Harrington State Bank in behalf of MacInnis.  The
plaintiff bank up to that time never demanded payment
of the note.  Nor did the Harrington State Bank have
any knowledge of any claim of interest in the note by
the plaintiff bank.  Thereafter the note was given back
to MacInnis by the Harrington State Bank and by
MacInnis again delivered to the plaintiff bank.

This acquiring of the note by the plaintiff bank long
after its maturity was, of course, if an acquisition of
the note independent of the bank's former holding of
it, such acquisition as opened to Dotson all defenses he
might have with reference to the note against Dudman,
the original maker.  The testimony of the president of
the plaintiff bank is all the evidence we have touching
the question of the purpose of the delivery of the note
back to MacInnis.  Indeed, the president's testimony
touching that purpose is practically wholly hearsay,
the note having been delivered to MacInnis by another
officer of the bank, who did not testify upon the trial
in this case.  Practically the only evidence we have to
negative the absolute surrender of the note by the bank
to MacInnis before he took it to the Harrington State
Bank is this practically wholly hearsay testimony of
the president of the plaintiff bank and the circumstance
that the note, after its dishonor and maturity, was
again delivered by MacInnis to the plaintiff bank.  The
note remaining unpaid, and the indebtedness of Mac-
Innis to the bank evidently remaining unpaid, though
renewed in the meantime two or three times, this action
was commenced by the bank in April, 1921, seeking re-
covery upon the note.

The real question decided by the court upon granting
the motion notwithstanding the verdict was very nar-
row.  The cause had been stripped of very important

questions, as questions of fact, by rulings of the court
in its instructions limiting the jury's inquiry to the one
narrow question which was ultimately decided by the
court as a question of law upon the awarding of judg-
ment notwithstanding the verdict; the court ultimately
coming to the opinion that even that question should
not have been submitted to the jury. It seems desirable
as we proceed that we have plainly before us what
these several questions were and how they were dis-
posed of. The court instructed the jury touching the
issues of the case, as to what questions were with-
drawn from them and what was to be decided by them,
as follows:

"The only question in this case which will be sub-
mitted to you for consideration will be the question
of whether or not after the Dudman note had been
transferred to the plaintiff bank it was relinquished
and surrendered up by the bank or whether or not the
bank still retains the note and has retained it from the
time the same came into its possession down to the
present time.

"All other matters in the case and issues raised by
the pleadings are withdrawn from your consideration,
including the entire affirmative defense set forth in the
defendants' answer, alleging fraud and false repre-
sentations on the part of Harry Dudman in procuring
the note from the defendants, also there is withdrawn
from your consideration the question of whether or not
plaintiff bank is or was the holder of the note in ques-
tion in due course. All evidence received in the case, if
there was such, pertaining to the question of whether
or not there was fraud on the part of Harry Dudman
in securing the note, and as to whether or not plaintiff
bank was or is a holder of the note in due course, is
withdrawn from your consideration.

"If you find by a preponderance of the evidence that
the plaintiff bank acquired the promissory note in
question as a pledge or collateral security, and that the
plaintiff bank voluntarily gave up and surrendered to

another all its rights, title and interest therein, then you are instructed that the plaintiff lost its lien to said note as a pledge or collateral security and lost and waived all rights which it may have had, if any, under such contract or agreement or pledge, and your verdict should be for the defendants."

These instructions, it seems to us, took from the jury the question of want of consideration and fraud impairing the validity of the note as between Dotson and Dudman, and also the question of the acquiring of the note by the bank in due course, so as to leave to the jury the sole, naked question of the bank having acquired the note at all. So the verdict of the jury must necessarily have been only a finding against the bank upon the sole, naked question of it being holder of the note at the time of the commencement of the action, wholly apart from the question of such holding being acquired in due course before maturity.

Assuming for the moment that the holding of the note by the bank, before its delivery to MacInnis and after its re-delivery by him to the bank, was a single, continuous holding as collateral to the indebtedness owing to it by MacInnis, the question of whether or not the bank, as a matter of law, could have been held to be the holder of the note in due course at the time of the commencement of the action, and had with reference to its then holding acquired the note in due course, is, upon this record, one of very difficult satisfactory solution. Much could be plausibly said in support of the contention made by counsel for the bank and the trial court's rulings, in the light of our decisions in *McNamara v. Jose,* 28 Wash. 461, 68 Pac. 903; *Scandinavian-American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *McLaughlin v. Dopps,* 84 Wash. 442, 147 Pac. 6; *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220, 170 Pac. 581; *Larsen v. Betcher,* 114 Wash. 247, 195

Pac. 27; *Farmers State Bank v. Betcher*, 115 Wash. 327, 197 Pac. 15; *Banner Meat Co. v. Rieger*, 125 Wash. 142, 215 Pac. 334; and *First National Bank of Ritzville v. Gunning*, 127 Wash. 307, 220 Pac. 793. While much could also be plausibly said to the contrary, in the light of our decisions in *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801; *Citizens' Sav. Bank v. Houtchens*, 64 Wash. 275, 116 Pac. 866; *National Bank of Commerce v. Drewry*, 70 Wash. 577, 127 Pac. 102; *Union Investment Co. v. Rosenzweig*, 79 Wash. 112, 139 Pac. 874; *Rohweder v. Titus*, 85 Wash. 441, 148 Pac. 583; and *First National Bank of Medical Lake v. Wiltzius*, 122 Wash. 637, 211 Pac. 275.

Some of these decisions may seem very near being in conflict with each other; but we think any such seeming conflict will be dissipated upon a critical consideration of the holding in each. However, when there is taken into consideration the evidence given upon this trial touching the return of the note by the bank to MacInnis, and the unsatisfactory nature of that evidence in support of the claim of the bank that such return of the note was with the intent that MacInnis should still treat the note as being held by the bank as collateral security to his indebtedness to it, we think that it cannot be decided, as a matter of law, that the holding of the note by the bank after its return to the bank by MacInnis, that being after its maturity, was other than a new acquisition of the note by the bank at that time. We think there are such reasonable grounds for difference of opinion upon that question that it could not be decided as a matter of law, but should have been left to the jury to decide. This conclusion calls for reversal of the judgment rendered by the court notwithstanding the verdict.

There accompanied the bank's motion for judgment

notwithstanding the verdict its alternative motion for a new trial; the court having granted the former, of course left the latter undisposed of. Some contention is made by counsel for Dotson that the bank's motions for judgment notwithstanding the verdict and for new trial were not timely made. We deem it sufficient to say, in view of the court's order of extension of time, made in pursuance of stipulation of counsel, that this contention is not well founded. It is necessary to decide this question, since the motion for new trial is yet to be disposed of, and counsel for Dotson are insisting that judgment be rendered upon the jury's verdict.

The judgment is reversed, and the cause remanded to the superior court for the disposal of the bank's motion for new trial, and for such further proceedings as shall be consistent with the views herein expressed.

MAIN, C. J., TOLMAN, BRIDGES, and MITCHELL, JJ., concur.

FULLERTON, HOLCOMB, MACKINTOSH, and PEMBERTON, JJ., concur in the result.