[No. 18447.   Department Two.   June 30, 1924.]

DAVID KOLMITZ *et al., Appellants,* v. FURGESON JANSEN
*et al., Respondents.*[1]

BILLS AND NOTES (64-3, 141)—BONA FIDE PURCHASER—NOTICE—
DUTY TO MAKE INQUIRY—EVIDENCE—SUFFICIENCY. An unsigned blank
rubber stamp endorsement without recourse, below and following
an unrestricted endorsement of a promissory note, is not sufficient
to put a subsequent purchaser on notice of an intent to endorse
without recourse, especially where his immediate endorser also en-
dorsed the note without restriction by writing his name above the
rubber stamp following the first endorsement.

SAME (52, 133)—ENDORSEMENT—WITHOUT RECOURSE—PAROL EVI-
DENCE—EXTENT OF LIABILITY. In such a case the words "without re-
course" following the endorsement are not sufficient to put a bona
fide purchaser on notice, since they do not immediately follow the
endorsement, and since they are a part of an unsigned rubber stamp
endorsement; especially where there was evidence that the rubber
stamp was placed there some months after the endorsement.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered September 24, 1923,
upon findings in favor of the defendants, dismissing an
action to reform a promissory note, tried to the court.
Affirmed.

*Cole & Dolby* and *Poe, Falknor, Falknor & Emory,*
for appellants.

*Riddell & Brackett,* for respondents.

BRIDGES, J.—First of all, one Mrs. Schelling gave
her promissory note for $2,400 to the appellant, who
was the plaintiff below.   This note was secured by a
mortgage on real estate.   Later the appellant pledged
the note to a bank in Seattle as collateral security for
a loan then made to him.   As a part of the process
of pledging, he endorsed his name on the back of the
note near the top.   Subsequently, the indebtedness

'Reported in 226 Pac. 1023.

being paid, the bank surrendered the note to him, but his name on the back was not crossed off, but allowed to remain.   Still later, the appellant had the note in some bank in San Francisco, for some purpose not very clearly shown.   Later still, and while the note was still in the San Francisco bank, he sold it to the respondent William Middlemas, and the latter, almost at once after receiving it, sold it to the respondent Jansen.   When it was delivered to Middlemas, the following notations were on its back: near the top was the name of the appellant David Kolmitz.   About an inch below his name was the following rubber stamp endorsement: "Pay to the order of.................. without recourse..............."   When Mr. Middlemas sold the note to Mr. Jansen, he endorsed his name immediately below that of the appellant and above the rubber stamp endorsement, there being plenty of room between the two for that purpose. After the respondent Jansen obtained the note and while he still held it, the appellant instituted this suit.

The complaint alleged that, before the note was transferred to Mr. Middlemas, the appellant had endorsed it without recourse, but that some person had wrongfully and fraudulently erased his name from such endorsement, thus leaving his endorsement an unrestricted one.   The prayer was that his name be restored to the endorsement and that it be adjudged that Mr. Jansen took and held the note without recourse to the appellant.

The trial court found that Mr. Middlemas took the note with the understanding that he had no recourse against the appellant, but that Mr. Jansen was a *bona fide* purchaser for value and had recourse to the appellant.   The plaintiffs have appealed from a judgment dismissing the action.

While the testimony very clearly shows that the appellant caused the stamp endorsement to be put on the back of the note shortly before he delivered it to Mr. Middlemas, and that he intended to transfer it without recourse to him, it is equally as clear that such endorsement was never signed by him, and that, when both Mr. Middlemas and Mr. Jansen acquired the note, it was in the identical form as to endorsements shown above. Indeed, he does not now contend that he ever signed the rubber stamp endorsement, his proof in that regard having failed. But it is contended that, even though the rubber stamp endorsement was not filled out or signed by the appellant, yet, because it was on the back of the note at the time Mr. Jansen purchased it, there was sufficient to put him on notice and to require him to investigate as to the purpose thereof. Section 3443, Rem. Comp. Stat. [P. C. § 4123], provides that a holder in due course is one who takes a negotiable instrument under the following conditions:

"1. That it is complete and regular upon its face. . . . 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 3447, Rem. Comp. Stat. [P. C. § 4127], concerning notice of infirmity, says:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such defects that his action in taking the instrument amounted to bad faith."

In *Scandinavian-American Bank v. Johnson*, 63 Wash. 187, 115 Pac. 102, we said:

"But it is equally well established that mere suspicion of an infirmity is insufficient to put the endorsee

upon inquiry, or show that he is not a holder in good faith.''

In the case of *Banner Meat Co. v. Rieger*, 125 Wash. 142, 215 Pac. 334, commenting on this statute, we said:

''But, since the passage of those acts (negotiable instruments acts), it is generally held that mere ground for suspicion as to the existence of defenses to the instrument is not equivalent to knowledge thereof by the purchaser, and failure on his part to make such inquiries as a reasonably prudent person would make will not defeat his claim as a purchaser in good faith.''

It is perfectly plain to us that the unsigned blank rubber stamp endorsement which followed the unrestricted endorsement of the appellant was wholly insufficient to put the respondent on inquiry; particularly so under the facts of this case. The testimony shows that Mr. Jansen stated before purchasing the note that he would not buy it unless it contained the unrestricted endorsement of Mr. Kolmitz, who was known to be financially responsible. He also knew that, immediately before purchasing the note, it had been in the hands of a bank in San Francisco. The trial court, upon first seeing the note, at once expressed the idea that the rubber stamp endorsement had been placed there by the bank in San Francisco, or someone else, and did not connect the appellant with it, and such seems to us to be a reasonable inference. It must also be remembered that when Mr. Jansen purchased the note, Mr. Middlemas, from whom he purchased it, had placed his signature immediately below the unrestricted endorsement of the appellant and above the rubber stamp endorsement. Appellants cite several cases from this and other courts in support of their contention. None of them is controlling. A fair example is *Hughes & Co. v. Flint*, 61 Wash. 460,

112 Pac. 633. One Maxwell had contracted with a Mr. Flint to construct a building. Hughes & Company knew of this contract and supplied Maxwell with some of the materials therefor. Flint gave his check to Maxwell for $1,500, and wrote on its face "on contract." Maxwell endorsed the check to Hughes & Company, who applied it on an old debt due from Maxwell. We held that, under the circumstances, Hughes & Company took the check with knowledge that it was given only on account of the Flint-Maxwell contract. It seems to us that the difference between that case and this one is at once apparent. We will not here review the other cases cited. They are not more favorable to the appellant than the *Flint* case. The blank rubber stamp endorsement would mean nothing to a purchaser of the note. There was nothing to connect the appellant therewith. It might have been placed on the note by any person other than appellant, because his unrestricted endorsement appeared above the blank endorsement.

But it is asserted that Mr. Jansen was in doubt about the matter because, before purchasing, he inquired of an attorney whether appellant's endorsement was unrestricted and was informed that it was. We are unable to see how this can affect the question, or even tend to show that Mr. Jansen had, or should have had, any suspicions concerning the unrestricted endorsement by the appellant.

The testimony shows quite conclusively that, as a matter of fact, Mr. Jansen was an innocent purchaser of the note and did not know that the rubber stamp endorsement had been placed thereon by the appellant. The following cases, in a general way, support the view we have taken. *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042; *Larsen v. Betcher,* 114 Wash.

247, 195 Pac. 27; *Banner Meat Co. v. Rieger, supra,* and cases therein cited.

But appellant further claims that, because the words "without recourse" follow his name, the endorsement should be construed as a restricted one, and that oral testimony was admissible to show that fact. If it be conceded that it is sufficient to place the words "without recourse" following the name of the endorser, and that oral testimony may be received to show that such was the purpose in a particular instance, yet appellant will not be assisted. In the first place, the words "without recourse" do not immediately follow appellant's name, but between the two are the words "pay to the order of .........." The words "without recourse" are a part of the unsigned stamp endorsement. In addition to this, appellant himself testified that his unrestricted endorsement was put on the note many months before the rubber stamp endorsement was made, and that the latter had no connection whatever with his former endorsement. Very likely appellant intended to transfer the note without recourse to him, but his purpose failed because of his own negligence.

There is some contention that one Macauley, through whom Mr. Jansen purchased the note, had knowledge that the appellant intended a restricted endorsement. The trial court found to the contrary, and we think correctly. A reading of the testimony convinces us that Mr. Jansen was a good faith purchaser for a valuable consideration and that he had and has a right to rely upon the appellant's unrestricted endorsement.

The judgment is affirmed.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.